## HARTFORD ACCIDENT & INDEMNITY CO. v. INDUSTRIAL COMMISSION OF UTAH.

No. 4130.    Decided August 25, 1924.    (228 Pac. 753.)

1. MASTER AND SERVANT—FINDINGS OF INDUSTRIAL COMMISSION ON SUBSTANTIAL EVIDENCE CONCLUSIVE. Supreme Court cannot disturb findings of Industrial Commission, where there is competent substantial evidence to support them.

2. MASTER AND SERVANT—EVIDENCE HELD TO SUSTAIN FINDING COMPENSATION CLAIMANT'S CONDITION RESULTED FROM INJURY. Evidence *held* sufficient to sustain findings of Industrial Commission that Parkinson's disease was contracted by plaintiff as a result of injury sustained in his employment.

3. MASTER AND SERVANT—REDUCTION OF COMPENSATION AWARD FOR LACK OF NOTICE TO EMPLOYER HELD UNWARRANTED. Where employer's foreman knew of accident when it occurred and did not consider it sufficiently serious to require report, and employé's failure to give notice was without intent to mislead or prejudice employer, case was not within Comp. Laws 1917, § 3156x, as amended by Laws 1921, c. 67, § 1, authorizing reduction of award by 15 per cent.

4. MASTER AND SERVANT—GENERAL STATUTE OF LIMITATION DOES NOT BAR COMPENSATION CLAIM UNLESS PLEADED. Comp. Laws 1917, § 6468, subd. 1, requiring actions on statutory liability to be commenced within one year, being no part of Compensation Act, does not bar claim unless pleaded or relied on.[1]

Proceedings by the Hartford Accident & Indemnity Company to review an award of the Industrial Commission of Utah, in favor of Louis A. Miller and against the Bennett

---

[1] *Spring Canyon Coal Co.* v. *Ind. Comm.*, 58 Utah, 608, 201 Pac. 173.

See Workmen's Compensation Acts, §§ 102, 127, 134.

Glass & Paint Company and the Hartford Accident & Indemnity Company.

AWARD AFFIRMED.

*Young, Boyle & Moyle, Willard Hanson,* and *A. H. Hougaard,* all of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty Gen., for defendant.

GIDEON, J.

The Industrial Commission by its order of January 28, 1924, awarded compensation in favor of one Louis A. Miller. A petition for rehearing was denied, and the matter is before this court upon a writ of error.

The commission in its findings, among other things, says:

"The doctors diagnosed his case as being one of encephalitis and paralysis-agitans, commonly called Parkinson's disease. That the employer had knowledge of said injury August 16, 1922, at the time of its occurrence. That this affliction is the result of the injury sustained on the 16th day of August, 1922, by the applicant."

Based on the findings and its conclusions, the commission made an award in favor of the applicant, Miller, and ordered the employer, Bennett Glass & Paint Company, or the insurance carrier, the Hartford Accident & Indemnity Company, to pay such award. The controlling question is: Is there any substantial competent proof in the record as certified by the commission to support the commission's finding?

The applicant, Louis A. Miller, had been an employé of the Bennett Glass & Paint Company for many years. It is the testimony of all of the witnesses that prior to August 16, 1922, he was a healthy, ablebodied man, a man of good habits, and one who lost very few days' work during his entire employment, of approximately 15 years. On August 16, 1922, the applicant, while engaged in his employment, fell a distance of about 8 feet, landing on his back on a pile of broken and scattered brick. The fall was caused by the

breaking of a plank upon which the applicant was standing. Witnesses testified that by reason of that fall the applicant did no work for two days. There is, however, no record of that made by the employer. After that the applicant continued to work at the same wage until January following. The commission found, and the finding is supported by evidence, that since the accident the applicant complained more or less of pain in his back, particularly in the lumbar region. The testimony lends support to the claim that the applicant gradually grew weaker and less able to do his work from the date of the accident to the date of the hearing before the commission. There is no contention that the applicant at the time application was made to the commission, and at the time of the hearing, was not afflicted with the disease named above; the only question being whether the disease was the result of the injury received at the time of the fall.

It has been repeated so often that this court is not authorized to disturb findings of the commission, if there is competent, substantial evidence in the record to support such findings, that it has become elementary in this jurisdiction. It is so provided in the statute, also.

Four physicians testified before the commission, and their testimony, except the opinion of applicant, is the only testimony as to the nature of the disease and what probably caused it. The applicant testified as to his condition of health prior to the injury and gave it as his opinion that the injury resulting from the accident caused the ailment from which he was then suffering. It should be stated that the physicians were not very conclusive in their opinions that the disease resulted from the injury, but in our judgment, there is sufficient evidence in the record to support the commission's findings.

It was testified that the disease might have resulted from influenza, a disease commonly spoken of as the "flu." It was shown that the applicant, in the year 1918, had a slight attack of this disease, then prevalent in the community. It was also shown, however, that the attack was very light, that the applicant was confined to his bed for only two days,

and that no bad effect resulted from that sickness. It was the opinion of the physician who treated applicant at that time that his present ailment did not result from that sickness.

Dr. Baldwin testified before the commission. In the course of his testimony he said that he would not say that the disease with which applicant was then afflicted did not result from the injury sustained on August 16, 1922. This question was propounded to Dr. Baldwin:

"What is your best judgment as to theory in the matter, Doctor, as to the injury and its relation to the present condition?"

The doctor answered:

"Well, from the history of the case and all, I would judge that probably the injury had something to do with it; but I wouldn't say positively about it, because we know too little about that condition to be at all sure what is the cause."

The record then shows the following questions propounded to and answered by this witness:

"Q. But from the examination made by you I understand you would be rather favorable to the theory the injury had something to do with the present condition? A. I would think that was a possibility. * * *

"Q. Have you ever read, in your literature, Doctor, of a condition of this kind following a back injury? A. I have read of trauma causing it. * * *

"Q. But have you read of cases of trauma being assumed as causing this condition? A. I know literature states trauma may be the cause of it."

Dr. Curtis, an expert in diseases of this nature, in the course of his examination testified:

"Q. But the inflammatory process in the brain, as you have explained it, sometimes is caused by a trauma? A. Yes.

"Q. That much is really definite and certain? A. Yes."

It is only fair to say, however, that this witness stated that he was doubtful about the cause of the ailment in the instant case, and would not give it as his opinion that the disease resulted from the injury.

Dr. Wilcox testified that he had been the family physician of Mr. Miller and had known him for ten years. He testified as to the general health of Miller prior to August 16,

1922. Dr. Wilcox admitted frankly that he is not what might be designated an expert, so far as this particular disease is concerned. He had treated but few cases in his practice. This further testimony by this witness appears in the record:

"Q. Would you care to give an opinion as to whether the condition testified to by Dr. Baldwin and Dr. Curtis was the result of this injury of August 16, 1922, as to whether that had anything to do with the present condition? A. Well, not for a positive opinion, because I wouldn't understand the subject sufficiently to do that; but it is my opinion an injury can cause such a condition.

"Q. Would you say, Doctor, that the influenza had anything to do with it? You treated him for influenza. A. I would think it did not, because it was a very mild attack—he had no brain symptoms with it and he never consulted me afterward for any nervous ailment whatever.

"Q. So you would eliminate it as being a cause? A. Not a probable cause. I wouldn't say it might not be a possible cause."

The witness then stated that he favored the theory that the injury was the probable cause of applicant's present condition.

Dr. R. W. Fisher was another witness. He examined the applicant in May, 1923, for the first time, and filed with the commission a written report. He also testified that he had had but a very few cases of this nature, possibly three, and that he would have to answer entirely from knowledge gained from his reading. In the transcript of his testimony taken before the commission the following appears:

"Q. Based on your reading and research work, what would you say? A. I would say the injury was the predisposing cause. * * *

"Q. And if this accident has anything to do with it, it is just one of the possibilities? A. If it is the predisposing cause, it is the cause. I only judge from my reading. They (the books) say any depressing condition can cause this Parkinson's disease, so I cannot say this was the cause, because no authorities I know say this is the cause. They only say it is a predisposing cause.

"Q. What would predisposing cause mean? A. If he had an injury that reduced his general physical condition, and if the nervous system wasn't normal possibly to begin with, then this would be a predisposing cause and precipitate his condition."

The testimony of these physicians that trauma may lead to or result in the disease from which the applicant

was suffering, considered in connection with the general condition of his health at and prior to the date of the injury, and the further fact that there is no explanation of the cause of the disease from other sources, in our judgment, is evidence sufficiently substantial and competent to sustain the deduction of the commission that the accident caused the affliction for which compensation is awarded.

It is argued that, under the provisions of chapter 67, § 3156x, Laws Utah 1921, the award made by the commission, if authorized to make any award, should be reduced 15 per cent. That section provides that if an employé claiming to have suffered an injury fails to inform his employer of the time and place of the accident and the injuries incurred within 48 hours, or fails to report for medical treatment within said time, compensation shall be reduced 15 per cent. It is, however, provided in that section that knowledge of the injury obtained from any source by the employer, or his managing agent, superintendent or foreman, or any person in authority, shall be sufficient to save claimant from such reduction, if it be found that there was no intent to mislead or prejudice the employer in making his defense. Under an additional proviso the statute states that if no notice of the accident or injury is given to the employer within one year from the date of the accident the right to compensation shall be wholly barred.

The commission found that the employer had knowledge of the injury at the time of the accident. The testimony establishes conclusively that a Mr. Hammond was foreman of the men working on the building when the accident happened. The foreman knew of the accident; in fact he saw the applicant fall. The foreman did not consider the injury, if any, sufficiently serious to require a report being made to the employer. There is no testimony that there was any intent to mislead or prejudice the employer in making his defense. In fact, it is not shown that the employer was misled or prejudiced by any delay. The finding of the commission that the employer had knowledge is supported by reason of the fact that its foreman knew of

the accident.    The provisions of section 3156x, supra, are therefore not applicable or controlling in this case.

The accident happened on August 16, 1922.   The application for adjustment of compensation was not filed with the commission until November 19, 1923, more than one year after the accident happened.   Some suggestion is made in the brief of petitioner that the claim for compensation is barred by the provisions of subd. 1, of section 6468, Comp. Laws Utah 1917.   It is provided in that subdivision that an action for liability created by statute, other than a penalty or forfeiture under the laws of this state, shall be begun within one year.   That one year limitation is no part of the Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165).   It is a part of the general statute under the title "Limitations."   No plea was entered or made before the commission, as shown by this record, that the petitioner here relied upon such limitation.   No suggestion was made during the hearing that the claim was barred by any statute.          4 It was stated by this court in *Spring Canyon Coal Co.* v. *Ind. Comm.*, 58 Utah, 608, 201 Pac. 173 : "It is also elementary, that unless pleaded or relied on, the statute is waived." It is further set out in that opinion that any one desiring to avail himself of the provisions of the statute of limitations must in some form indicate that he relies on the defense, usually by pleading it.

The award of the commission is affirmed.

WEBER, C. J., and THURMAN, FRICK and CHERRY, JJ., concur.