[Civil No. 4701. Filed October 9, 1944.]

[152 Pac. (2d) 297.]

ALUMINUM COMPANY OF AMERICA, Acting for and on Behalf of DEFENSE PLANT CORPORATION, Phoenix Works, HEDRICK-BECK-BATE, Contractors, and AETNA CASUALTY AND SURETY COMPANY, Petitioners, v. THE INDUSTRIAL COMMISSION OF ARIZONA, RAY GILBERT, EARL G. ROOKS and FRED E. EDWARDS, as Members of and Constituting The Industrial Commission of Arizona, and H. W. GREEN, Respondents.

Mr. Wallace W. Clark, and Messrs. Hill, Robert & Hill, for Petitioners.

Mr. H. S. McCluskey, and Mr. Fred O. Wilson, for Respondent Commission.

Messrs. Cox & Cox, and Mr. Lloyd Canfil, for Respondent Green.

Mr. Alfred C. Lockwood, *Amicus Curiae.*

Mr. F. C. Struckmeyer, *Amicus Curiae.*

UDALL, Superior Judge.—This case grows out of a claim for compensation filed by respondent, H. W. Green, against the employer and insurance carrier, named in the caption, and hereinafter referred to as the petitioners. The respondent, Industrial Commission of Arizona, on October 1, 1943, made a permanent total disability award to Green. A petition for re-hearing was allowed and the hearing held on December 22, 1943; thereafter, on January 7, 1944, the Commission rendered its decision on re-hearing affirming its original award. The petitioners being dissatisfied therewith have brought the matter before

this Court for review, it being their principal contention that the findings and award are not supported by the evidence.

The respondent Green, hereinafter called the applicant, is a white male, who at the time of the injury was 59 years of age. He was a skilled carpenter and structural steel worker, which occupation he had followed for many years. During the two or three years immediately preceding the accident he had not lost any time from work by reason of any sickness or ailments causing disability and he worked steadily, except while going from one job to another, or when he wished to lay off. In the thirty days immediately preceding his injury he earned $281.88; and in the year previous between $2400 and $2800.

The applicant went to work for Hedrick-Beck-Bate, contractors, one of the petitioners herein, at the Aluminum Plant, near Phoenix, on February 10, 1943. On March 20, while working as a carpenter on the second floor he stepped on a loose board which threw him off balance, and to prevent falling some 15 feet he caught himself on the cross-arm of a ladder and swung by one arm, twisting his body and injuring the lower part of his back and spine.

He was first examined and treated by Dr. Norman A. Ross, who in his initial report to the Commission, dated March 30, described the injury as "right lumbosacral sprain and spasm right lumbar." The doctor further stated that the X-ray diagnosis showed "no recent bony injury." The report made no reference to any other disabling condition not due to the accident, though that specific question was asked. He estimated that the applicant would be able to resume light work in three or four weeks.

Temporary total disability was awarded the applicant by the Commission on May 7, the justness of which is not questioned. The injured man was un-

able to return to work and on May 27, more than two months after the accident, he was examined by a Medical Board, composed of Drs. A. C. Kingsley, Willard Smith and A. M. Tuthill. Then for the first time "the usual sign and symptoms of Parkinson's disease" were noted in their report to the insurance carrier. In addition the report showed a definite old osteoarthritis of the spine and pelvis which had been aggravated by the accident. They pronounced him totally incapacitated for any form of manual labor. None of the parties question the fact that the injured man has been unable to perform any work since the accident of March 20, 1943, nor is it contended that he will ever be able to again perform manual labor.

The Industrial Commission, after extended hearings, found that the applicant while employed in the State of Arizona by the above named defendant employer sustained an injury arising out of and in the course of his employment (the details of the accident and resulting injury and wages earned were recited as we have heretofore set them forth), and concluded:

"1. . . . Prior to his injury, said applicant had a pre-existing arthritic condition of the back which was aggravated by the said injury; and Parkinson's disease which retards recovery."

"3. That said applicant is totally disabled and will continue to be totally disabled for the remainder of his life by reason of said injuries and the aggravation of pre-existing disease and pre-existing disease retarding recovery."

On the basis of these findings the Commission made an award for accident benefits and temporary total compensation amounting to $1185.57, and the additional sum of $183.22 monthly during the life of said applicant for total permanent disability.

The petitioners admit that the applicant was employed by them, that the accident referred to occurred,

and that this employee sustained an injury, arising out of and in the course of his employment, to his back justifying the temporary total disability award. However they vigorously resist the final award which in effect requires them to pay for disability from a Parkinson's disease, which they claim all the medical evidence shows was not caused, nor aggravated, by the injury. Furthermore, they contend that the Commission in making the award based it upon the aggravation of a pre-existing arthritic condition of the back and that the evidence does not justify a finding of 100% disability on that score alone.

It might be well to first consider the nature and symptoms of Parkinson's disease. This disease, known to the medical profession as paralysis agitans, and to the layman as shaky palsy, according to all of the medical testimony in this case, is a slow progressive disease involving the basal ganglia, mainly in the corpora strista, which might be termed as the central station. From this we have minor nuclei which have control in co-ordinating our muscular actions. The basal ganglia is in the lower part of the brain, just as the brain begins to form in the spinal cord. It is well protected by the skull and in the lower part by the cushion of the spinal fluid meninges. There are two types of the disease:

1. The type that frequently follows encephalitis, which may occur at any age.

2. The senile, arterial-sclerotic type, which the applicant was afflicted with, usually begins when a person is between 50 and 60 years of age and may extend from 5 to 15 years.

The cause of the disease, so Drs. Kingsley and Smith testified, is unknown to medical science, and it is incurable. One doctor used this illustration, he said: "Parkinson's disease is like a light filament that burns out and swings and when it contacts there is a

momentary light; that where you have ten thousand of these swinging and momentary contacts you get all sorts of combinations; that there are thousands of these swinging filaments in the nerve centers and that they hit and miss without rhyme or reason.''

The symptoms are: In the beginning a slight pain in the back, usually affecting one side before the other. Following soreness and slight pain there will be a rigidity which may extend over the entire body; a rigidity and tremor; later there is characteristic facial expression with considerable salivation and difficulty in standing.

In this case the medical testimony is remarkably free from conflict; all of the Doctors who testified about the matter were in agreement, (a) that the applicant had been afflicted with Parkinson's disease for a ''long time'' prior to the injury, though he may not have been aware of it; (b) that the accident did not cause him to have Parkinson's disease; (c) that this disease was not aggravated in any way or manner by the injury; (d) that it was virtually impossible for this disease to be caused or aggravated by trauma; (e) that this disease was principally responsible for his present total permanent disability; (f) that there was no causal relationship between the Parkinson's disease and the injury.

While there might be some isolated sentence in the medical testimony that could be tortuously construed otherwise, we think this is the fair import of the testimony on this matter. We of course do not weigh the testimony, but only search the record to see whether the Commission's findings are supported by any substantial evidence, even though there might be other contradicting evidence.

There is however amply testimony in the record to show that the applicant prior to the injury had an arthritic back, and that the injury relied upon aggra-

vated the pre-existing arthritis which is undoubtedly the partial cause of his present total disability. One of the doctors referred to this condition as "crippling arthritis," but none of them testified that he was wholly permanently disabled from this arthritic condition. The referee refused to permit any examination by the petitioners seeking to establish percentages due to each cause, so that an apportionment might be made by the Commission. We discuss this ruling on evidence later.

The law with reference to pre-existing diseases is clearly stated by Dr. Schneider, he says:

"The courts, consistent with the theory of the Workmen's Compensation Acts, hold with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he may have appealed to the act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred, and the disability or death does not result from the disease alone, progressing naturally, as it would have done under ordinary conditions, but the injury aggravates and accelerates its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the Compensation Acts." 1 Schneider on Workmen's Compensation, p. 312, Sec. 138.

Our decisions are entirely in accord with this view. *Hartford Acc. etc. Co.* v. *Industrial Comm.*, 38 Ariz. 307, 299 Pac. 1026; *Maxwell* v. *Hart*, 45 Ariz. 198, 41 Pac. (2d) 1089; *Hunter* v. *Wm. Peper Const. Co.*, 46 Ariz. 465, 52 Pac. (2d) 472; *Paramount Pictures* v. *Industrial Comm.*, 56 Ariz. 217, 106 Pac. (2d) 1024; *Dauber* v. *City of Phoenix*, 59 Ariz. 489, 130 Pac. (2d) 56.

It is significant that the Commission, in this case, did not base its award upon the injury

causing an aggravation of the Parkinson's disease. The award merely states that the latter disease *retarded recovery* of the aggravated arthritic condition. If the only effect of a non-compensable disease is to retard recovery from a compensable injury and it does not in any manner tend to prevent ultimate recovery from such injury, then that retardation may be considered in awarding compensation for temporary disability, but it may not be considered in awarding compensation for permanent disability. We are not here concerned with a temporary disability award. It would seem that if, at the time of the award, the Parkinson's disease was retarding recovery of the arthritic condition, then the applicant had not recovered. If he had not recovered therefrom then his condition had not become stationary or static and an award for permanent disability on that ground would be premature. *Ossic* v. *Verde Central Mines,* 46 Ariz. 176, 49 Pac. (2d) 396.

Respondents' counsel cite us to four cases where awards of Industrial Commissions in other states were upheld in granting compensation for an aggravation of Parkinson's disease. In these cases doctors testified that trauma may lead to or result in an aggravation of a latent Parkinson's disease. That this affliction is one which follows upon the heels of an injury, trauma, or infection, or emotion. *Hartford Accident & Indemnity Co.* v. *Industrial Comm.,* 64 Utah 176, 228 Pac. 753; *Moffett* v. *Bozeman Canning Co.,* 95 Mont. 347, 26 Pac. (2d) 973; *Barkhurst* v. *Department of Labor and Industries,* 150 Wash. 551, 274 Pac. 105; *Natalini* v. *Riefler & Sons, Inc.,* 286 Pa. 301, 133 Atl. 547. The medical testimony in those cases is so at variance with that found in this record that it adds proof to our statement made in the case of *Rice* v. *Tissaw,* 57 Ariz. 230, 112 Pac. (2d) 866, 869, "that medicine is not an exact science."

It further appears that at least one recognized medical text, in speaking of the arterio-sclerosis type of paralysis agitans, states:

"It was in these cases that emotional disturbances *and injuries* were supposed to have played a part."

(III, the Cyclopedia of Medicine, 634, published by F. A. Davis and Company) and,

"Trauma may at times be the precipitating agent in the production of the syndrome."

(III, The Cyclopedia of Medicine, 635.)

These highly persuasive cases can be of no avail to the applicant here for the simple reason that there is no medical testimony supporting such a claim. *Knapp* v. *Arizona Highway Dep't,* 56 Ariz. 54, 104 Pac. (2d) 180; *Almanza* v. *Phelps Dodge Corp.,* 57 Ariz. 150, 112 Pac. (2d) 215; *Caekos* v. *Stanley Fruit Co.,* 55 Ariz. 72, 98 Pac. (2d) 471. And for the further reason that the award is not bottomed upon an aggravation of the latent Parkinson's disease.

█ While it is true that the employer is not the insurer of the health of his employees, *Rowe* v. *Goldberg Films,* 50 Ariz. 349, 72 Pac. (2d) 432, yet he takes the employee subject to his condition when he enters the employment. *Dauber* v. *City of Phoenix, supra; In re Madden,* 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000.

█ The Supreme Court of Utah in the case of *Pinyon Queen Mining Co.* v. *Industrial Comm.,* 59 Utah 402, 204 Pac. 323, 325, well stated a principle that is equally applicable to our statutory law, we quote:

"The statute prescribes no standard of fitness to which the employé must conform, and compensation is not based on any implied warranty of perfect health or of immunity from latent and unknown tendencies to disease which may develop into positive

ailments *if incited to activity* through any cause originating in the performance of the work for which he is hired.''

An employer is not however responsible for disability, causing a loss of earning power, resulting from a pre-existing disease, unless the disease is proximately produced or aggravated by the injury complained of. *New River Coal Co.* v. *Files,* 215 Ala. 64, 109 So. 360. The law does not cover loss of earning power arising from some extraneous cause. In other words, it is only those injuries which are proximately caused by the accident that are compensable. Proximate cause is defined as:

''The nearest independent cause which is adequate to and does produce the result, or in other words, the nearest in relation to cause and effect.'' 45 C. J. 908.

The burden of proof of all the material elements necessary to sustain an award under the Compensation Act is always upon the applicant. *Wiggins* v. *Pratt-Gilbert Hdw. Co.,* 48 Ariz. 375, 62 Pac. (2d) 124; *Dauber* v. *City of Phoenix, supra; Vest* v. *Phoenix Motor Co.,* 50 Ariz. 137, 69 Pac. (2d) 795. We feel that in the instant case the applicant has failed to successfully carry this burden of proof. The record does not disclose any causal connection between the injury and the aggravation of the latent disease of paralysis agitans. Certainly from this record the Commission could not properly find that the injury of March 20, 1943, was the proximate cause of the Parkinson's disease, or any aggravation thereof.

Lastly, we consider the petitioners' assignment of error based upon the refusal of the referee who conducted the hearing to permit the medical experts to testify as to the percentage of permanent disability the applicant suffered by reason of the injury which aggravated the pre-existing arthritic condition.

The statutes of Arizona expressly authorize the Commission to appoint an examiner or referee. Sections 56–905, 56–907, and 56–912, Arizona Code Annotated 1939. *Johnson* v. *T. B. Stewart Const. Co.*, 37 Ariz. 250, 293 Pac. 20.

 The petitioners complain of the failure of the Commission itself to hear the testimony and rule directly upon the admissibility of evidence. At the oral argument it developed that the Commission rarely, if ever, conducts a hearing, leaving it invariably to a referee to take the testimony and then they review the "cold record" and make findings upon which the award is based. Though they have the power to follow this procedure, we seriously doubt whether the legislature contemplated that this should be the rule rather than the exception. It would seem that the Commission, as the ultimate trier of the facts, is handicapping itself in these comparatively few contested cases by not observing first hand the character of the witnesses, their appearance and deportment upon the stand and the many "intangible" things occurring in a hearing that perforce do not appear in the printed record.

 It necessarily follows that if a referee is to conduct an orderly hearing that he has the power and the duty to rule upon the admissibility of evidence. However, if the effect of his ruling is to prevent the Commission from having before it when it makes its findings and award relevant and material evidence which was excluded from the record by the referee, the award must be set aside. This for the same reason that the judgment of a trial court would be reversed if it erroneously excluded evidence of that class from the consideration of the jury. *Egelston* v. *Industrial Comm.*, 52 Ariz. 276, 80 Pac. (2d) 689.

We are thus to consider whether the proffered medical testimony which was excluded was material. From what we have previously stated and as the record now stands it is apparent that the referee did exclude relevant and material evidence that had a direct bearing and should have been considered by the Commission on the matter of apportioning the disability of the applicant, between the effect of aggravated arthritis and that of non-aggravated Parkinson's disease. The referee and Commission were led into this mistake through their erroneous interpretation of the statutory law. They considered that sub. (d) of Sec. 56–957, Arizona Code Annotated 1939, reading in part:

"In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. In case there is a previous disability, . . . the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury"

as only applying to the "scheduled injuries" set forth under sub. (b), *supra;* whereas, we have held in two cases that the quoted subdivision also applies to the "other cases" or "odd lot cases" referred to under sub. (c) of the same section. *Kilpatrick* v. *Hotel Adams Co.,* 42 Ariz. 128, 22 Pac. (2d) 836; *Hoffman* v. *Brophy, ante,* p. 307, 149 Pac. (2d) 160, 162. We stated in the case last cited, however, that "percentage of disability" means "the percentage of disability to earn his former wages," and the "percentage of 'functional physical disability'" attributable to the injury in this case, which the petitioners were not permitted to develop and show, is only one of the

factors to take into consideration in determining the applicant's impaired "ability to earn."

The Rhodes case, cited as *Lee Moor Contracting Co.* v. *Industrial Comm., ante,* p. 52, 143 Pac. (2d) 888, 889, was also erroneously interpreted by the referee and Commission. They construed this statement of the opinion:

"The best rule seems to be that when a disability is attributable to injury that is compensable it is not necessary to apportion the disability between the concurring causes"

as justification for ruling out the evidence proffered by the petitioners on the apportionment angle. A careful reading of this opinion, which we adhere to, shows that the applicant there

"sustained an injury to his back which aggravated, accentuated, accelerated, and exacerbated a pre-existing arthritic condition in his spine"

both were compensable causes arising out of the same injury, one being the direct effect of the accident and the other being the aggravation of the existing arthritic condition. The Oklahoma cases cited by us in support of this proposition will all show a similar situation. Under such circumstances it would be wholly unnecessary, even foolish, to apportion the percentage of disability arising from each separate cause.

The principle stated in the Rhodes case, *supra,* however has no application when, as here, one of the two concurring causes which produced the total disability was not attributable to the accident and injury for which compensation was to be granted, but arose independently out of a disease which was not compensable under the record as it stands in this case. Any other construction would violate the fundamental principle of the compensation law, to wit: "That compensation is only to be granted when the disability or disease results proximately from the accident."

534

Inasmuch as the findings and award are not supported by the evidence, and the further fact that the referee excluded relevant and material evidence that should have been considered by the Commission, the award is set aside.

McALISTER, C. J., and ROSS, J., concur.

NOTE: Due to the absence of Judge R. C. STANFORD from the State, the Honorable LEVI S. UDALL, Judge of the Superior Court of Apache County, was called to sit in his stead.