[Civil No. 4748. Filed April 30, 1945.]

[158 Pac. (2d) 540.]

ELY RADACA, Petitioner, v. UNITED STATES SMELTING, REFINING AND MINING CO., and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Mr. W. H. Chester and Mr. Z. Simpson Cox, for Petitioner.

Mr. C. Leo Guynn, for Respondent Employer.

Mr. David P. Jones, and Mr. H. S. McCluskey, for Respondent Industrial Commission.

MORGAN, J.—On November 5, 1942, petitioner, while in the employ of United States Smelting, Refining and Mining Company, sustained injuries by being thrown from a truck onto the highway. The injuries

consisted of severe bruises and several broken ribs. He was at the time aged 52 years and had worked for a considerable period as a miner, mostly at mucking. He was hospitalized for sixty-four days at Kingman. The employer was engaged in the mining business and had fully complied with the terms and provisions of the workmen's compensation law and was insured against liability under such law by the Industrial Commission of Arizona.

Early in January, 1943, petitioner came to Phoenix and was treated and examined by several doctors; x-rays were also taken. The evidence disclosed that in mid-January his left chest, back and left side were sore, he spit up a little blood, was weak and had pain in the left chest. He was suffering from an advanced stage of osteo-arthritis of the lower dorsal region of the spine; also from silicosis moderately advanced. The films showed the broken ribs to be in good condition. Some of these ribs were fractured near their attachment to the spine but had united in proper alignment. The medical evidence disclosed that petitioner was suffering from spondylitis deformans or hypertrophic spondylitis of long standing and progressive character, which was aggravated by the injury.

A medical report of four physicians, filed with the commission in May, disclosed petitioner's mental status to be depressed and antagonistic; that he could do light work, and that no benefit could be obtained from prolonging treatment which had theretofore been given him. Three of the doctors reported his condition had reached a stage of permanency, and that he had partial general permanent disability attributable to the accident involved amounting to 10%. The fourth joined in this report but fixed the disability at 25%. On May 20th the commission entered its findings and award for temporary disability awarding petitioner $881.72, together with the additional sum of $11.89 monthly during his life. Following this, petitioner requested

commutation of this award to its fair present value and payment in a lump sum. In compliance with this request, the commission entered its award commuting the compensation to its present value, in the sum of $1894.29, which was forthwith paid. Applicant signed a waiver of right to apply for rehearing or to an appeal. On September 22nd petition and application for readjustment of the applicant's claim, on the ground that his disability resulting from the injury had increased 15%, and that he was entirely prevented from working at any gainful employment, supported by a medical report disclosing that he had at least a 25% disability at that time, was filed. Rehearing was allowed and testimony adduced on the part of the applicant on January 12, 1944. Hearing was continued. The respondent commission caused further medical examinations to be made of the applicant, including x-ray films. On March 20, 1944, the medical advisory board of the commission filed a comprehensive report reviewing the case and, based upon that report, finding there was no new and additional disability attributable to the accident since the May 20, 1943 award. On July 10th the respondent commission made findings to the effect that the applicant was not suffering from any new and additional or previously undiscovered disability resulting from or caused by the accident other than as shown in its findings and award of May, 1943. It further found that the disability had become stationary, permanent and fixed prior to May 20, 1943, and that applicant's disability resulting from the accidental injury was not in excess of 10%. The case comes before us on *certiorari* from this award.

No satisfactory statement of facts appears in petitioner's brief, nor in the briefs filed by the respondent commission and respondent employer. We have, therefore, been compelled to review the entire record consisting of 193 documents, many of which have no bearing on the issues presented, and 344 pages of testimony,

in addition to the three briefs of the interested parties.

The petitioner has raised a number of procedural questions which we think should be disposed of first. These, briefly, are: (1) Hearings should be held directly before the commission or some of its members. (2) Where hearings are had before a referee, written findings or reports by the referee should be filed and made a part of the record. (3) Investigations and reports following the hearing on January 12th were without any written order of the commission, and the commission erred in considering evidence so procured.

■ Petitioner's first contention may be disposed of quickly by reference to two decisions of this court. In *Johnson* v. *T. B. Stewart Const. Co.,* 37 Ariz. 250, 293 Pac. 20, and in the late case of *Aluminum Co. of America* v. *Industrial Comm.,* 61 Ariz. 520, 152 Pac. (2d) 297, similar claims were determined adversely to the position of the petitioner here.

■ In support of the second ground, petitioner takes the position that referees or agents appointed by the commission under authority of Sec. 56–912, Arizona Code Annotated 1939, should perform their duties in compliance with the rules governing superior court referees and masters, as set forth in Sections 21–1102, 21–1103, 21–1107, 21–1108 and 21–1111, Arizona Code Annotated 1939. We cannot agree with this view. Sec. 56–912, *supra,* giving the commission power to appoint agents or referees, specifically states that such agent shall have the powers "of an inquisitorial nature, granted herein to the commission and as a referee appointed by a superior court with regard to taking testimony." Obviously, this applies only to the actual taking of evidence and has no relation to reports of masters mentioned in Sections 21–1101 and 21–1107, *supra.* The superior court master or referee has no inherent power to make reports. Sec. 21–1103,

*supra,* provides: "The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only." A report without an order authorizing it could not be treated as part of the record in a superior court case. Sec. 56–912, *supra,* contemplates that the referee originally appointed by the commission may make a report. This is evidenced from the concluding sentence of the section: "The recommendation made by such agents shall be advisory only and shall not preclude the taking of further evidence or further investigation." Undoubtedly the commission has the power to order the agent or referee taking testimony to make and file a report which would then become a part of the record. But the law does not require it to do so. We pointed out in Aluminum Co. of America v. Industrial Comm., *supra,* that the commission was somewhat handicapped in deciding contested cases by not observing first hand the witnesses and their appearance and deportment on the stand. This observation has force here. It would seem to us that a written report or findings and conclusions of the referee originally taking the testimony would be of considerable value to the commission, and it certainly would be to this court where questions requiring a review of the evidence is presented. Such reports should also be of benefit to the interested parties, but we cannot say, as a matter of law, the absence of such a written report denies either to the employer or employee the fair hearing which is contemplated by the law. The legislature has vested the commission with great discretion insofar as its procedure is concerned. We have no supervisory power over the commission, nor does this court wish in any way to trespass upon its jurisdiction. What we have said is in no way intended as a criticism. The cases which have come before us indicate that the commission, as now constituted, is endeavoring to fairly and fully investigate the

claims which have been presented. Indeed, the present case is an example of this. Both the employer and employee were given every opportunity to present their evidence.

The question as to whether the commission received reports from the referee in the instant case is not before us. It is admitted that reports were given to the commission by the examiners who took the testimony. Where the examiner or referee is connected with the commission at the time it renders its decision, it may be presumed that he has communicated his observations and conclusions to that body. While the point is not necessary for determination now, it might be well to observe that a fair and full hearing to litigants under the due process clause of the constitution requires that the examiner or referee who hears the evidence, where there is a sharp conflict in the testimony, must in some way participate in the decision or give his conclusions and impressions of such testimony by either written or oral reports. The basis for this is that where weight and credibility is to be given to testimony of witnesses, the litigants are entitled to have the person who conducts the hearing and sees the witnesses to at least have his conclusions and impressions reported to the fact-finding body. If a situation should arise where it could not be assumed that the observations and conclusions of the examiner had been communicated to the commission, and the evidence was in such conflict that the weight and credibility to be given testimony of the various witnesses was the determining factor, the due process rule relating to hearings might have to be applied. Attention is called to the case of *Crow* v. *Industrial Comm.*, 104 Utah 333, 140 Pac. (2d) 321, 148 A. L. R. 316, in which the application of the rule of due process, where hearings are held before examiners, is admirably stated both in the controlling and concurring opinions.

■ We see no merit in the third contention of petitioner relative to investigations and reports after the hearing of January 12th, which were made and procured without any written order of the commission. It seems to us immaterial whether the commission in the first instance authorized its subordinates to make such investigations and secure the reports. They were accepted and adopted by the commission. Petitioner was given a full and complete opportunity to examine witnesses who had made the reports. There is nothing in the record to indicate that the commission based its decision on any confidential reports or the testimony of any witnesses which the petitioner did not have the opportunity to cross-examine. The procedure followed seems to be in full compliance with the opinion of this court in *Simpkins* v. *State Banking Dept.*, 45 Ariz. 186, 42 Pac. (2d) 47.

■ This brings us to the main question of the case, was there any additional or new disability that could be attributed to the accidental injury not comprehended within the terms of the original award. We have held that the commission has continuing power over its awards, but that this power can be exercised only by the showing of additional and new disability attributable to the accident, not known at the original hearing and which could not have been considered in making the first award. *Zagar* v. *Industrial Comm.*, 40 Ariz. 479, 14 Pac. (2d) 472; *Stephens* v. *Miami Copper Co.*, 59 Ariz. 528, 130 Pac. (2d) 507; *Rhoades* v. *Lee Moor Contr. Co.*, 60 Ariz. 161, 132 Pac. (2d) 432; *Hogle* v. *Arizona Concrete Co.*, 44 Ariz. 1, 33 Pac. (2d) 589; *Russell* v. *Bald Eagle Min. Co.*, 44 Ariz. 105, 33 Pac. (2d) 616; Sec. 56–967, Arizona Code Annotated 1939.

In the *Stephens case* [59 Ariz. 528, 130 Pac. (2d) 509] the following appears:

" . . . But it is also the law that if, as a result of the original injury, after the time of the award peti-

tioner's condition becomes aggravated, he may petition that his case be reopened, and if he shows such aggravation he is entitled to compensation for it, but not for the original condition for which the award has already been made.''

In the Rhoades case it was held that increased disability from an injury arising after an award is compensable.

In the consideration of applications for increase or rearrangement of compensation the following rules have been applied by this court: Where an award is accepted without review, it may not be repudiated on the ground of inadequacy. When the award becomes final by failure to appeal, it is *res judicata* as to all matters determined thereby. The award must be considered as in full and complete satisfaction for the injury and disability as it existed at the time of the award. *Zagar* v. *Industrial Comm., supra; Scott* v. *L. E. Dixon Co.,* 42 Ariz. 525, 27 Pac. (2d) 1109; *Muehlebach* v. *Dorris-Heyman F. Co.,* 43 Ariz. 526, 33 Pac. (2d) 339; *Harambasic* v. *Barrett & Hilp & Macco Corp.,* 58 Ariz. 319, 119 Pac. (2d) 932; *Stephens* v. *Miami Copper Co., supra.*

The application for readjustment of applicant's claim was on the sole ground that his disability had increased 15% by reason of aggravation of his condition after the original award. It is evident the application was filed under the rule promulgated in the Stephens case, *supra,* which we have quoted. The medical testimony introduced by the applicant tended to show that at the time of the hearing he had a 25 to 50% physical disability as a result of the accidental injury. On the other hand, the testimony of other medical experts was to the effect that the physical disability of applicant resulting from his injury was not more than 10%. The reports of the medical experts for the commission tended to show that the applicant's disability resulting from the accident had wholly ter-

minated prior to the date of the original award and that such physical disability resulting from the accident never exceeded 10%. The opinions of thes experts were supported by medical facts and reasonable hypotheses. In fact, all of the doctors' opinions have the support of reputable medical testimony.

The situation is wholly unlike that which appeared in the case of *Tashner* v. *Industrial Comm. et al., ante,* p. 333, 157 Pac. (2d) 608. Under the rule announced in *Caekos* v. *Stanley Fruit Co.,* 55 Ariz. 72, 98 Pac. (2d) 471, and which was referred to with approval in the Tashner case, the commission had the legal right to determine the case in accordance with one or the other of these opinions. Had the commission concluded, following the opinions of the experts for the applicant, that there had been a new and additional increase of disability by reason of the injury, its finding in this respect would have to be upheld. Likewise, its finding that there was no new or additional disability, based upon opinions supported by reputable medical testimony, is binding upon this court.

The evidence showed that at the time of the original award applicant was unable to work at his usual occupation, and that he was fit only for light labor. The testimony at the hearing for rearrangement was substantially to the same effect. X-ray films taken in 1944 disclosed no appreciable change in the condition of applicant from that in the films taken in January, 1943. The commission's findings are supported by reasonable evidence and we are bound by them.

The test is whether there was an increase of disability due to the accidental injury. The fact that the applicant was able to earn less after his first award is not the controlling factor. Such lessened earning disability may be the result of natural causes, such as disease, age or infirmity which have no relation to the accident. Here there was evidence which would have warranted the commission in finding that if there was a

decrease in the applicant's ability to earn wages after the first award, it was due entirely to natural causes and not to the injury. There is no question that aggravation of a disease may be compensable if due to the effects of an injury by accident. There was proof, however, that the aggravation of applicant's disease from the injury had ceased prior to the first award. We see no merit in the assignment that the applicant was limited in his cross-examination of expert witnesses. The record shows that the applicant was allowed to fully cross-examine these witnesses. No error exists in the record on this account.

The award is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.