**173 P.2d 639**

**LEWIS v. INDUSTRIAL COMMISSION et al.**

**No. 4806.**

Supreme Court of Arizona.

Oct. 21, 1946.

Z. Simpson Cox, of Phoenix, for petitioner.

John R. Franks, of Phoenix (H. S. Mc-Clusky, of Phoenix, of counsel), for respondent Commission.

Guynn & Twitty, of Phoenix, for respondent employer.

MORGAN, Judge.

Petitioner, on May 24, 1943, sustained an injury while employed as a bricklayer for respondent Aluminum Company of America which was insured against liability under the Workmen's Compensation Law, Code 1939, § 56-901 et seq., by respondent Ætna Cas. and Surety Co.

The accident resulted from the fall of a fellow workman carrying a 2x12 plank which struck the petitioner on the left side of his back with considerable force, causing an abrasion six inches in length "with swelling and tenderness extending down back of left thigh." X-rays taken on the day of the accident disclosed no fracture, bone injury nor tearing of the tendons or tissues. On June 2 additional films were taken. The pictures taken on these dates showed that petitioner had a rather old and well developed case of arthritis existing in two forms, an osteo or hypertrophic arthritis and rheumatoid arthritis. Prior to the accident he had never suffered any ill or observable effects from either type of the existing arthritis. He was 44 years of age, and had been engaged as a bricklayer for many years. Petitioner returned to work and was engaged in some light occupation for about six weeks. Following the injury he suffered from pain and was finally unable to perform any labor, and because of his condition has not been gainfully employed since July 19, 1943.

The petitioner was examined by a number of medical specialists and various reports were submitted to the commission. On September 20, 1943, the commission entered its order directing payment of benefits for temporary total disability to June 20, 1944. The petitioner returned to his home in Texas, and was examined by two

physicians there. He returned to Arizona in June, 1944, and was again examined by a board of three physicians, one of whom was selected by himself. On July 22, the commission awarded petitioner compensation for temporary partial disability for a period not to exceed 60 months subsequent to June 20, 1944.

Respondent insurance carrier protested the award and after hearing, the commission's finding was that petitioner had no disability resulting from the accident after June 19, 1944, and set aside its award of July 22. From the decision upon rehearing, petitioner has appealed to this court.

The sole question for consideration on this appeal is whether the evidence is of such a character as to justify the final finding of the commission. It is agreed by all parties that the petitioner is totally disabled because of pain which results from the form of infectious arthritis generally designated as rheumatoid arthritis. It is conceded that at the time of the accident petitioner had both hypertrophic and rheumatoid arthritis. All the medical experts are agreed apparently that his disability as of June, 1944 has no relation to the hypertrophic form of arthritis. It appears, too, from the testimony that the medical experts are agreed that the infectious or rheumatoid arthritis is progressing. The experts apparently are in accord in that the accident did not cause or bring on the rheumatoid arthritis. The disease was in existence at the time of the injury.

The doctors agree that hypertrophic arthritis is a chronic generally nondisabling disease or condition of the joints indicated by bony spars or spurs at the site of the attachments of tendon, fascia or ligament, and usually due to continued irritation or strain.

Rheumatoid arthritis, on the other hand, is "A chronic disease of the joints * * * marked by inflammatory changes in the synovial membranes and articular structures and by atrophy and rarefaction of the bones." Dorland's American Illust. Med.Dict. 20th Ed., p. 164. The medical experts admit they do not exactly know the cause of rheumatoid arthritis, but they agree that it is of an infectious character, produces inflammation, is characterized by pain, and affects changes as suggested in the foregoing definition.

Some of the doctors testified that the rheumatoid arthritis at the time of the accident was latent in character, and that the accident caused it to flare up, or that it was aggravated by the injury. Approximately an equal number of other medical experts testified that the injury was not of such a character, there being no tearing of ligaments, tendons or tissues, or fracture of bones sufficient to light up or activate the disease. Their evidence as to this may be summed up by the following excerpt from the report of Doctors Watkins, R. F. Palmer and Moore, on June 19, 1944, "The nature and severity of the accident would not cause aggravation of this type of ar-

thritis so far as permanent changes are concerned, and only temporary aggravation of symptoms or production of symptoms, * * *".

It is the position of these doctors that the diseased condition of petitioner's spine, on the date of the accident, made it more susceptible to pain because of the injury than would be a normal spine, and, as we understand, the pain resulting from the accident might continue for a longer period than if the spine was in a healthy condition. They say, however, that the injury received by petitioner could not produce the arthritis, nor was it of such a character as to permanently aggravate the pre-existing disease. They base this upon the ground that the injury was not sufficiently severe to make the injured parts in anyway susceptible to the ravages of the disease. It is their theory, therefore, that petitioner's condition as of June, 1944 must be attributed solely to the progress of the disease itself. It is their opinion that the period of aggravation of symptoms or of symptoms precipitated by the injury has passed, and that the present symptom of disabling pain is due entirely and solely to the nature and progress of the rheumatoid arthritis.

The other experts take the position that since petitioner was not disabled by the disease at the time of the injury and became disabled shortly thereafter, the injury is the activating cause of the pain, and that therefore the disability as it now exists was produced by the accident. In other words, that the injury caused the flare-up or activation of the disease, resulting in petitioner's present disability.

From what has been said it appears that the different theories of the medical experts are based upon what would seem to be not only admitted facts but reasonable hypotheses. Whether the rheumatoid arthritis was permanently activated by the injury is largely a medical question. It would also seem to be largely a matter for expert medical opinion when the effects of an injury to a diseased spine would subside, and whether the pain and consequent disability as of a year after the accident was from the effects of the injury itself or was a result of the progress of the disease.

No rule can be laid down in cases of this character. It is a question of fact in every case to be determined by the proper triers. We think that the decision in this case must be governed by the former opinions of this court. In Hunter v. Wm. Peper Const. Co., 46 Ariz. 465, 52 P.2d 472, and Tashner v. Industrial Commission, 62 Ariz. 333, 157 P.2d 608, the rule has been established that where the determination of a question of disability must rest on expert medical testimony, and the opinions of the experts are based upon supporting facts and logical theories, this is reasonable evidence for the commission's consideration. Here the evidence is conflicting. The commission might have fol-

lowed either of the theories advanced by the medical witnesses.

Since the opinions of the medical experts, which were apparently followed by the commission, conformed to the rule of the cases mentioned, we can only affirm the award.

STANFORD, C. J., and LaPRADE, J., concurring.