186 P.2d 959

HARTFORD ACCIDENT & INDEMNITY CO. v. INDUSTRIAL COMMISSION et al.

No. 4991.

Supreme Court of Arizona.

Nov. 24, 1947.

Conner & Jones and Charles E. Conner, all of Tucson, for plaintiff.

Robert E. Yount, of Phoenix (H. S. McCluskey, of Phoenix, of counsel), for respondents.

LA PRADE, Justice.

This appeal is before us on certiorari from an award of The Industrial Commission awarding accident and temporary disability benefits to the claimant Mrs. Glenna F. Griffith, an employee of Safeway Stores, Inc. Petitioner was the insurance carrier of the employer. The Commission in its findings found that the applicant employee on June 22, 1946, sustained a personal injury by accident arising out of and in the course of her employment. Petitioner objects to the award on the ground that the finding of fact that claimant sustained a personal injury by accident arising out of and in the course of her employment is not supported by the evidence; is contrary to the evidence; is founded on mere speculation, surmise and possibilities; and consequently the Commission was without jurisdiction to make the award.

The applicant was first employed by the employer in one of its Tucson stores in the month of July, 1945, and remained continuously employed by it up until June, 1946, the time of the alleged accident and her operation hereinafter referred to. She was employed as a cashier though occasionally assisted in the restocking of empty shelves. The operation referred to consisted of replacing a dropped kidney by sewing it to the twelfth rib, which operation was performed June 26th. The applicant returned to her same employment on August 15, 1946, and was so employed at the time the award was made on January 22, 1947.

A brief resume of the facts so far as material to this review is as follows. The applicant testified that as early as 1938 she began to have trouble with her side, which occasionally on wakening in the morning would be sore and painful. From 1938 until the time she went to work for her employer herein she had very little difficulty with her side but was conscious of some abnormal sensations and pains. In November or December, 1945, she suffered acute pain in her side, felt as if her side was "swelling up inside, like something was pushing it out." One morning in December, 1945, on rising she noticed the pain very definitely and felt ill. Nevertheless she reported for work, but during the day at a time when she was price-marking nuts she was overcome by the pain. At this time a physician was called and she remained away from work a couple of days. For a few months thereafter she took various treatments—sulpha tablets and penicillin shots—which gave her some re-

lief, though she was bothered every few days with "burning" and "difficulty in urination." On June 18, 1946, she waked feeling bad and experiencing the sensations related above, especially the feeling that her side was "swelling up," but she reported for work. Upon arriving she made known her condition and was told to lie down and did not engage in any work that day. At this time she was examined by Dr. Donald B. Lewis who testified that she had a palpable mass on the right side which he temporarily diagnosed as a dropped kidney. Two days later, on the 20th of June, he performed a cystoscopy to confirm his diagnosis. At the completion of this examination he definitely discovered that the kidney had dropped and that there was an obstruction of the urethra.

Neither the claimant nor the employer filed any accident report until December, 1946, this action being prompted by a suggestion made by the Travelers Insurance Company which company had been paying claimant's benefits as the health insurer of the employee of the employer. This suggestion apparently was made by the Travelers Company upon a report from Dr. Lewis to the Industrial Commission reading as follows:

"According to the history, the condition was present before the accident sustained on June 22. This accident, however, aggravated the existing condition enough so that surgery was necessary."

Prior to making the award the employee was examined by a referee of the Commission. Rather than summarizing her testimony with reference to any accident we shall give the testimony verbatim:

"Q. Now, was there ever an occasion when you had an accident from any source that you know of while you were working? A. None whatsoever.

"Q. There was never an occasion when you fell down or slipped or anything fell on you, or anything of an unusual nature occurred? A. No, sir.

"Q. Was there ever a time when you were lifting a basket of groceries or any other item when you had an acute attack of this pain? A. No, sir; I had pain, a little sharp pain, but never enough that I would quit working.

"Q. And was there ever an occasion when you did any strenuous lifting or unusual amount of work, or lifting of any sort? A. Well, I don't know how to explain that, but some of those baskets were awful heavy.

"Q. Well, in a normal day's work, you would probably be lifting heavy baskets and light baskets and all different weights? A. Yes.

"Q. You do not remember any one single occasion when you attempted to lift anything that you could not lift? A. No, sir; because any time I would feel pain there after I had lifted it."

A further reference to the occurrence of an accident was later directed to her

attention in the following question and answer:

"Q. And there is some reference made in the file to injuries sustained on June 22, 1946, while lifting. Now, do you have any recollection of anything special occurring on June 22nd, that would be after you first saw Dr. Lewis? A. No, I don't remember of anything special."

Nowhere in the record do we find any evidence of a slip, fall, strain, twist, or unusual event. The foregoing testimony constitutes all of the testimony of the applicant relative to any accident. Dr. Lewis testified that when he examined the claimant on June 18, 1946, she informed him that she was working at the Safeway Stores, had to be on her feet a good deal, and oftentimes had to lift heavy packages and baskets of groceries; that she did not inform him or give him a history of any accident that she might have had; that he did not know the actual cause of the dropped kidney; and that the condition could have existed prior to the time she went to work for Safeway Stores. He also testified that the type of *work* that claimant was performing could have aggravated and did aggravate the condition existing at the time he first examined her.

Applicant was admittedly an employee of the employer at the time she became so ill that the operation was necessary. The sole question for determination by the Commission was: Did she receive an injury by *accident* arising out of and in the course of her employment? Our law limits compensation to injuries occasioned by *accident arising out of and in the course of the employment.* Sections 56-930, 56-931, 56-936, 56-952, A.C.A.1939. This court has on numerous occasions interpreted these code sections. In Phelps Dodge Corporation v. DeWitt, 63 Ariz. 379, 162 P.2d 605, 606, we said:

"* * * Each of these sections limits compensation to cases where the employee has sustained an 'injury by accident arising out of and in the course of his employment.'"

To the same effect are Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017; Rowe v. Goldberg Film Delivery Lines, Inc., 50 Ariz. 349, 72 P.2d 432; Wiggins v. Pratt-Gilbert Hardware Co., 48 Ariz. 375, 62 P.2d 124; In the Matter of Mitchell, 61 Ariz. 436, 150 P.2d 355; and Aluminum Company of America v. Industrial Comm., 61 Ariz. 520, 152 P.2d 297. In the Rowe case, supra, the employee-claimant in the usual course of his employment leaned over to pick up two boxes of films, at which time he experienced a pain in his chest. Upon examination it was discovered that he had suffered a spontaneous pneumothorax. In that case the court said [50 Ariz. 349, 72 P.2d 434]:

"It is, of course, true that if one engaged in the regular course of his occupation, which includes the moving or lifting of heavy weights, does accidentally slip and fall, and by reason of such slip or fall

is injured, he is entitled to receive compensation under the act, for in such case there is the unexpected event—the slip or fall—which is the cause of the injury. If, on the other hand, there is no accident, such as a slip or fall, and it is merely the ordinary shifting of packages required by the business which, due to the physical condition of the petitioner or any other reason not involving an accident as we have defined it, causes the injury, he cannot recover compensation. * * *"

This pronouncement of the law was adhered to and analyzed in the Wiggins case, supra, and in Phelps Dodge Corporation v. DeWitt, supra.

■ Petitioner earnestly contends that the Commission was without jurisdiction to make an award for the reason that there was no substantial evidence before it tending to establish the existence of an accident. Its position is that the principles laid down in the case of Pierce v. Phelps Dodge Corporation, supra, and Rowe v. Goldberg Film Delivery Lines, Inc., supra, are controlling, and that when the principles therein enunciated are applied to the facts in the instant case it is conclusively demonstrated that there was no accident. Respondents answer by saying:

"* * * We will not take up the time of the Court with further discussion of the application of the Pierce case to the present case, *since the matter has been adequately and completely covered in the Mitchell case with which we are in accord.*" (Emphasis supplied.)

The Mitchell case sustained an award made for the death of an employee resulting from breathing carbon tetrachloride over a period of four or five days. This employee was compelled to work in a small unventilated room in cramped surroundings, which circumstances and surroundings were out of the ordinary and not in the usual course of events. The specific holding of the court was as follows [61 Ariz. 436, 150 P.2d 361] :

"We hold therefore, anything we may have said in the Pierce case to the contrary notwithstanding, that there was an injury by accident in this case within the meaning of the Arizona Law, as now interpreted, in that the inhalation by the deceased of the fumes from the use of the poisonous carbon tetrachloride, under the circumstances heretofore stated, produced effects that were not intended, foreseen or expected. This was an unlooked for mishap, an unexpected, unusual and extraordinary event not reasonably contemplated as a part of normal conditions of employment."

This holding speaks for itself. It does not hold nor intimate that an injury can be compensated for that was not caused by accident. It determined that the facts there disclosed an accident. From the quotation from respondents' brief above set forth, we infer that they are of the opinion that the principles set forth in the

Pierce case have been abrogated and that the instant case is controlled by the holding of the Mitchell case. We cannot follow this reasoning. We are unable to discern wherein the holding in the Mitchell case indicates that this award should be sustained. The holding in the Pierce case was to the effect that there must be some sudden or instantaneous event or occurrence which taken by itself can be recognized as an accident, and that the injury must be shown to have followed as a consequence of that specific event. Coupled with this was the implication that there must always be an external act or occurrence, such as slipping, falling, straining, being hit by falling objects, cave-in—acts usually accompanied by violence.

This rule was not broad enough to meet the unusual fact situation presented in the Mitchell case. In this connection the court said:

"While accidental injuries are usually sudden happenings and are caused by some violent or external means such as a traumatic injury, not all accidents fall into such a mold, or such a straight-jacketed pattern. * * *"

We reached the conclusion that not all accidents can be molded to fit the definition of the Pierce case. A correct appraisal of our holding in the Mitchell case suggests that we determined that the rule of the Pierce case was too restrictive and was not all inclusive; that the principles as far as they went were good law and were not denounced; they were merely enlarged. In the ordinary course of human events and misadventures the principles enunciated in the Pierce case will be applicable to the great majority of events designated as accidents. We consider that this statement is consonant with our interpretation of the Mitchell case made in the Phelps Dodge v. DeWitt case, supra, wherein we said:

"* * * Nevertheless, we pointed out in the Mitchell case that the Pierce case had been correctly disposed of in view of the facts there existing even though *the restrictive definition in the Pierce case was abrogated.* That the Pierce case was decided correctly is apparent because there was no causal connection between the employee's death and any accident. The employee merely collapsed while normally walking from one place to another." (Emphasis supplied.)

Right here we deem it advisable to take cognizance of a statement appearing in the decision of this court in Goodyear Aircraft Corporation v. Industrial Comm., 62 Ariz. 398, 406, 158 P.2d 511, 515, making reference to our holding in the Pierce case which reads:

"* * * The petitioners relied on our decision in Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017, in which we had held that an accident must be some sudden or instantaneous effect or occurrence, the implication being that there could be no recovery unless there was an external act

or occurrence, usually one of violence, which caused the injury or death. In commenting upon that rule, and in effect *overruling* the Pierce case, * * *" (Emphasis supplied.)

A careful reading of the Goodyear Aircraft case, supra, discloses that there were two questions in that case for determination: First, did the injury suffered by the employee occur in the *course* of his employment? Second, did the accident *arise out* of his employment? The injured employee lost an eye due to the explosion of a bottle of cola which he was about to place in contact with the ice in a container furnished by the employer in which was prepared iced drinking water. No question was presented as to whether or not this occurrence was an accident. The observation there made—"In commenting upon that rule, and in effect *overruling* the Pierce case * * *" (Emphasis supplied)—was purely dictum. As stated above merely the all-inclusiveness of the definition set forth in the Pierce case was abrogated. The Mitchell case demonstrated that there was a fact situation which was in fact and law an accident but without the rule of the Pierce case.

▆ Counsel for respondents have submitted the following proposition of law in support of the award:

"Where physical injury received by an employee in the course of employment, aggravates an already existing physical condition or disease, injured employee is entitled to compensation to extent of disability caused thereby in the same manner as though his condition had been produced originally and directly by the injury." Citing Hunter v. Wm. Peper Const. Co., 46 Ariz. 465, 52 P.2d 472; Dauber v. City of Phoenix et al., 59 Ariz. 489, 130 P.2d 56, at page 59; Lewis v. Industrial Comm. et al., Ariz., 173 P.2d 639; Tashner v. Industrial Comm., 62 Ariz. 333, 157 P. 2d 608.

The statement of the law under this proposition is not a complete statement of law and is inaccurate, because the physical injury which aggravates an already existing physical condition or disease must be caused by *accident* arising out of and in the course of the applicant's employment. The cases cited by respondents in support of their proposition confirm our foregoing statement and demonstrate the inaccuracy of the statement of law as set forth. Respondents argue that the condition of applicant's kidney which was aggravated by her work to the point where surgery was necessitated was an unlooked-for mishap, an unexpected, unusual, and extraordinary event, not reasonably contemplated as part of the normal conditions of employment. It would be just as logical to argue that a cashier reporting for work with a severe cold aggravated her condition by remaining on her feet and forcing herself to perform her normal duties at a time when she should have been home in bed and therefore entitled to compensation.

266

We recognized in Phelps Dodge Corporation v. DeWitt, supra, that a person may suffer an internal accident where it is proximately caused by an unusual physical effort resulting from a twist, strain, or disarrangement. Claimant's employment called for no extraordinary or arduous physical effort. Thousands of women are employed in a like capacity, which is suitable to a woman's physical strength. This claimant was not called upon to exert any extraordinary force or effort in performing her duties. There was no mishap, no slipping, no falling, no twisting, no jerking, and no disarrangement of the kidney proximately caused or contributed to by anything that she did in her employment. The award specifically says that she suffered the accident on June 22nd. The physician had already (June 20th) examined her and discovered the dropped kidney, and estimated that the condition could have existed for years. In any event he was unable to say when it did happen or how. The claimant was unable to say how, when, why, or where it occurred. The Commission's award was not based on an aggravation of a pre-existing condition caused by injury by accident arising out of and in the course of employment. We have repeatedly held that where there is any substantial evidence supporting findings of the Commission, or if the evidence is in conflict so that reasonable men might differ as to the ultimate facts, the Supreme Court will sustain the findings of the Commission. We have likewise, in cases too numerous to cite, held the converse to be true—that where there is no substantial evidence to support the findings and award this court will set the award aside.

In Phelps Dodge Corporation v. DeWitt, supra, we said:

"* * * We are of the opinion that where a workman is suffering from a pre-existing diseased condition and, while engaged in his usual work under circumstances which require no extra or unusual strain or effort, suddenly dies, his death or injury is not the result of injury by accident. * * *"

Such is the case before us. There was no evidence of any injury by accident on June 22nd, or at any other time during the course of her employment with Safeway Stores, Inc., which was the proximate or a contributing cause of the dropping of the kidney or in aggravation of any pre-existing condition.

The award is set aside.

STANFORD, C. J., and UDALL, J., concur.