455 P.2d 977

CONTINENTAL CASUALTY COMPANY, and James Macchiaroli Fruit Company, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, John Ahearn, C. Lawrence Huerta and Frank G. Murphy as members of and constituting the Industrial Commission of Arizona; and Nola Countryman, Respondents.

No. 9531—PR.

Supreme Court of Arizona.

In Banc.

June 17, 1969.

Rehearing Denied July 8, 1969.

Chris T. Johnson, Phoenix, for Continental Casualty Co. and James Macchiaroli Fruit Co.

Robert D. Steckner, Phoenix, for Arizona Industrial Comm.

Stephen S. Gorey, Phoenix, for respondent Countryman.

UDALL, Chief Justice.

This case is before us on a petition for review, filed by the Industrial Commission, of an award of the Commission vacated by the Court of Appeals whose opinion appears in 8 Ariz.App. 289, 445 P.2d 846.

Nola Countryman, hereinafter referred to as the employee, was employed as a fruit packer by James Macchiaroli Fruit Company, hereinafter referred to as the employer. Her duties involved emptying bags of grapefruit and putting the contents into cases weighing up to fifty pounds, and lifting or sliding the cases onto a conveyor belt. This required her to bend, reach, lift, and twist, which strained her back. On April 25, 1964 she reported:

"I was trying to lift a picker's sack full of grapefruit to empty it and pulled or strained my back. I * * * finished the day packing and was suffering some pain but I kept trying to work as I needed the work, but the pain seemed to get worse each time."

This will hereinafter be referred to as the "first injury."

The Industrial Commission accepted her claim and paid benefits and compensation. She continued to complain, worked off and on, and kept seeing doctors who turned in

varying reports of her condition and ability to work. During this period she also claimed to have reinjured her back several times. In February 1965 a group of doctors held a consultation and reported that her condition was not yet stationary but that the evidence of continued disability was only subjective. On May 17, 1965 a new group of doctors held another group consultation. They recommended that she see her own doctor for high blood pressure, and reported that the objective findings did not substantiate her subjective complaints. This group's recommendation was that the patient be discharged immediately without any residual disability attributable to the April 25, 1964 injury. On May 26, 1965 her doctor discharged her from treatment. On June 11, 1965 the Commission made findings and an award, and paid her through May 26, 1965. The Commission's file number is AZ 20856. This award was promptly protested and a petition for rehearing was filed.

On July 2, 1965, while back at work for the same employer, she reported:

"While packing I reached around to the right and backward, for some fruit, and as I brought my hands back to put the fruit in the box, my back snapped, and I felt faint as the pain was so severe, and I layed [sic] in the lounge the rest of day."

Medical treatment followed. The employer, however, protested the acceptance of the new claim by a letter to the Commission, which stated that the employee had been angered because of the office manager's refusal to help her reopen the old claim, stayed away from work on July 1, 1965, showed up on July 2, was placed to work for the day, worked all morning without complaint of any pain or discomfort, and shortly before noon told her fellow workers she was going to report another injury to her back while reaching for a grapefruit, and did so report to the floor foreman.

When the accident report reached the Commission, it gave it a new file number, NG 3045, and put a note in that file that there had been a previous injury in file # AZ 20856 and that "Both claims should be considered together."

The question involved here is whether the second injury was an aggravation of the first one, or whether it was merely part of an intermittent disability caused by the first injury. Since the employee was working for the same employer, and was again disabled, this question would be unimportant, were it not for the fact that the State Compensation Fund, hereinafter called the Fund, was the insurance carrier at the time of the first accident, and the petitioner, Continental Casualty Company, hereinafter called Continental, was the carrier when the second injury occurred. Continental wants the Fund to pay for both accidents; the Fund wants Continental to pay for the second one. Continental has accused the referee, who heard the case, of bias, causing him to withdraw from the case. It impugns both the fairness and the competence of the Commission, and disputes many of the facts. For example, Continental writes in its brief:

"Courtney Varner, a referee, in a biased and prejudiced act, seeing the Continental Casualty Company had insured the employer on July 1, 1965, directed the Claims Department to open a new case No. NG 3045 to attempt to place liability in this case on a new insurance carrier. Since that time * * the Commission has attempted to keep the file in NG 3045 completely separate from AZ 20856 * * *."

As we have previously indicated, the Commission did just the opposite, and noted in the file that the two claims should be considered together.

Again, Continental writes:

"She has filed numerous petitions to reopen case No. AZ 20856. * * * The Industrial Commission has failed to act on any of them. In desperation, the claimant, after the July 2 reoccurrence, filed a new claim form."

This statement casts doubt upon the honesty of the employee and the truth of her report of a second injury. It implies that she was undergoing continuous pain and disability and, becoming weary of convincing the Commission that this was so, she falsely filed a claim of a new injury. Since the attorney for Contintental, who wrote the brief in which these statements appear, did not represent the employee, we can only conclude that he is engaging in speculation rather than reporting what he has learned first-hand from his client.

This extended discussion of the facts is due partly to contentiousness on the part of Continental, and partly to the vagueness of the medical testimony. It is impossible for an appellate court to render a decision and write a clear concise opinion, using as a foundation the shifting sands of disputed facts. The Commission has the advantage of hearing and seeing the witnesses. For both of these reasons, the law long ago evolved the rule that findings made at the trial level will not be disturbed on appeal if there is evidence to support them, even though the reviewing court would not have reached the same conclusions. Schmerfeld v. Hendry, 74 Ariz. 159, 163, 245 P.2d 420; Cole v. Town of Miami, 52 Ariz. 488, 497, 83 P.2d 997.

On August 11, 1965 the Commission held a formal hearing on both claims together. On November 1, 1965 a decision was rendered on the first claim, affirming the previous findings and award. That decision is presently pending in the Court of Appeals.

The second claim continued its progress separately. Due to the employer's protest that there was no second injury, the Commission, on September 8, 1965 made findings and an award that the claim was non-compensable because the employee did not sustain an injury arising out of her employment. This decision was promptly protested. On October 14, 1965 the Commission received the X-ray taken on July 6, 1965, with the report of claimant's doctor, which stated that the disk spaces in her spine were "well-maintained." On November-

ber 9, 1965 the Commission received from Dr. Meredith (the employee's new physician) a letter stating that an electromyogram done October 18th on the employee's back showed a ruptured disk, that six weeks of conservative therapy had produced no improvement in her condition, and that the case should be reopened for surgery. Her former physician, Doctor Snyder concurred. Dr. Ergenbright, in consultation, reported on December 8th that there were objective signs of a nerve root compression, and recommended surgery. A hearing set for December 17, 1965 was postponed to April 29, 1966 because of impending surgery. On December 14 a disk excision was performed. On February 1, 1966 Dr. Snyder reported that the patient was "getting along well." The hearing was again continued—this time to July 1, 1966. On April 19 Doctor Snyder reported that he had seen the employee on April 7th, that her recovery was not proceeding as expected, and that a spinal fusion should be undertaken.

On November 9, 1966 the hearing was finally held, on the claim of a second injury. Before it commenced, the referee announced that the transcript of the August 11, 1965 hearing would be made a part of the record. It was also disclosed that the appeal of the claim for benefits and compensation for the first injury was being held in abeyance by the Court of Appeals, by its order entered upon an agreement between the parties, because there was a question of whether the present disability was a continuance of the first one.

Dr. McGovern testified that his examination on December 10, 1965 showed there was a nerve compression at "L–5" with a possible herniated disk; that he could not tell whether it came from the first or second injury. A fellow worker, Ernestine Hill, testified that on July 2, 1965 she had observed the injured employee crying and was told by her that she had hurt her back; that prior to that date she had not observed any change in the woman's ability to work, although she had seen her cry several times before. Another witness

named Lindsay testified that after the first accident the employee had slowed down; that she used to be the fastest packer in the crew. Elisa Everett, a lady who worked beside the injured woman said that on July 2, 1965 the latter told her: "I just snapped my back." Mr. White, the foreman testified that the employee was the top worker of the crew, prior to the first accident, but was not quite as fast after that; that she complained a time or two about her back; but that she was still doing her work and he was satisfied with it. This does not mean too much, because the workers were being paid on a piecework basis and any slowdown, therefore, would not be ground for dissatisfaction. Dr. Meredith testified that the employee gave him a history of the first and second injuries and of two or three minor other injuries in between; that her symptoms were continuous from the date of the first accident; that in all probability the first accident had a causal relation to the disk degeneration; that a ruptured disk gets progressively worse from every little movement; that she was presently more than 40% disabled; that she could not work at all at the time of the hearing; that the second injury was "the straw that broke the camel's back"; that he thought all of the present disability was caused by the first accident. Dr. Ergenbright testified he believed the employee suffered a ruptured disk in the first accident; that a ruptured disk usually gets progressively worse; that the second injury was the "straw that broke the camel's back"; that the ruptured disk was "a significant aggravation of a pre-existing condition"; that an attempt to allocate the disability between the two accidents would be pure guesswork.

At the hearing, the employee asked merely that her compensation be paid and that the determination of which carrier should pay the money, be decided later.

The hearing was continued to February 9, 1967, to take Dr. Snyder's testimony, since he was unable to attend the second hearing. His testimony was that he first saw the patient on September 30, 1965; that he diagnosed her trouble as a ruptured disk; that he removed the disk surgically; that the first injury was sufficient to sustain a "diskogenic disease"; that the re-injury in July, 1965 was an "aggravation" of that disease; that a causal relation existed back to both accidents; that the original disk injury would not necessarily deteriorate; that an acute disk rupture wouldn't show on an X-ray; that disk injuries often go away with rest; and that the second injury was the "straw that broke the camel's back" and precipitated the total disability.

On September 6, 1967, after a delay of nearly seven months, the Commission rescinded its order which declared the second injury to be noncompensable, and on September 7, 1967 the Commission made a new finding that the injury of July 2, 1965 was compensable and that benefits were owing the employee from that date, and made an award to that effect.

Continental thereupon took the second injury case to the Court of Appeals.

Although the first injury claim was filed in the Court of Appeals long before the instant case, that Court has reversed the award in the instant case, without deciding the earlier one. Perhaps the earlier one is being held pending this Court's disposition of the case at bar.

The Commission argues that the employer takes the employee as he is, and that if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is "caused" by the injury. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627; Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573. Under that rule, Continental, as the carrier at the time of the second injury, must make the payments.

■ The Court of Appeals says that the rule of Murray, Tatman, supra, and similar cases, is not applicable, because the pre-existing conditions of the claimants in those cases were not "employment-caused," and were not covered by Workmen's Com-

pensation Laws. "[That] distinction is significant, and destroys the basis of the Commission's argument", says the Court's opinion. We do not agree. Proof that this distinction is *not* significant is found in the following provision of A.R.S. 23–1065, subsec. A(5) which the Court cites but from which it omitted the exquisitely applicable words italicized:

> "An employee who suffers from a pre-existing disabling condition * * * *whether or not created by an industrial injury*, and who thereafter sustains an injury * * * which subsequent accident has permanently aggravated the previous condition, shall receive such benefits as provided * * *."

The Court quoted that statute to support its statement that "Our statutes, however, suggest that an apportionment between insurers is required if such apportionment is practicable."

Conceding arguendo that our state "suggests" that an apportionment is required where practicable, we are unable to see its application to the instant case. The statute specifically says that it applies where an employee "suffers from a pre-existing *disabling* condition." (Italics ours.)

In the instant case, at the time of the second injury the employee was working under an award which terminated her compensation payments "without disability attributable to the injury of 4–25–64"—an award which was based upon ample evidence at the time. Though the correctness of this award is still pending in the Court of Appeals, a reversal—if one comes—will have to be based upon some reason other than lack of sufficient evidence to support the award. An award made after a hearing, correct at the time it was made (i.e., supported by the evidence) cannot be changed by subsequent testimony; its correctness must rest upon the record made prior to the award. A petition to reopen raises new issues and, if granted, takes effect only from the date of its filing.

Once the validity of the award is accepted, there is no basis for applying the statute on apportionment. On the record before us, we must affirm the Commission's award granting the employee compensation based entirely upon the second injury of July 2, 1965, at which time the employer was insured by the Continental Casualty Company.

The opinion of the Court of Appeals is vacated and the award of the Industrial Commission is affirmed.

LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.

NOTE: Justice FRED C. STRUCKMEYER, Jr., did not participate in the determination of this appeal.