533 P.2d 706

George RUSSELL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Bud Antle, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 1062.

Court of Appeals of Arizona, Division 1, Department C.

April 8, 1975.

Rehearing Denied April 30, 1975.

Review Denied May 28, 1975.

Rabinovitz, Minker & Dix by Bernard I. Rabinovitz and James S. Dix, Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by R. Kent Klein, Phoenix, for respondent employer and respondent carrier.

## OPINION

STEVENS, Judge.

This Court has been petitioned to review the award of The Industrial Commission of Arizona to determine whether an award which apportioned the workman's disability between the industrially related disability and the non-industrially related disability is reasonably supported by the evidence.

On 7 November 1969, George Russell (petitioner) was working as a lettuce processing operator. He was standing in water performing his duties when he received an electrical shock due to faulty wiring. The petitioner was knocked to the ground by the shock and sustained a bilateral lumbar disc herniation among other injuries. His claim for compensation was accepted by Notice of Claim Status on 26 November 1969. The Industrial Commission of Arizona fixed the petitioner's average monthly wage at the statutory maximum of $1,000 on 23 December 1969. On 6 February 1970, The Industrial Commission granted permission for the petitioner to return to his home in Salinas, California, and to receive further medical attention there. On 3 July 1970, by Notice of Claim Status, the petitioner was changed to a light work status. The petitioner was reinstated to a total disability status following a Request for a Hearing.

On 11 February 1972, a Notice of Claim Status was issued providing that temporary compensation and medical benefits were terminated, discharging the petitioner with an unscheduled permanent partial disability, and advancing permanent disability compensation in the amount of 55% of the difference between the average monthly wage and $350.00 per month. On 7 July 1972, The Industrial Commission of Arizona entered a Findings and Award for Unscheduled Permanent Partial Disability which found a 35% general physical disability as a result of the industrial injury and a 65% reduction in earning capacity entitling the petitioner to the sum of $357.50 per month. Upon petitioner's request, hearings were held in Salinas, California on 9 February 1973. On 6 July 1973, the hearing officer issued his Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability as amended by the Order *Nunc Pro Tunc* issued 10 July 1973. The petitioner filed a Motion for Reconsideration and, subsequently, a Request for Review. On 11 September 1973, The Industrial Commission of Arizona issued a Decision

**400**

Upon Review Affirming Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability. This Court was petitioned for a writ of certiorari to review the lawfulness of this award.

The petitioner's discontent is primarily aimed at findings 5 and 6 of the Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability. First, petitioner alleges errors in finding 6 which reads as follows:

"6. That the lay and medical testimony and Exhibit No. 3 all establish the existence of physical conditions from which Applicant is suffering, such as a pulmonary (emphysema) problem, heart or arteriosclerotic disease conditions, generalized degenerative arthritis, and some hearing loss; that although it must reasonably be found said conditions do adversely affect Applicant's earning capacity and his motivation to seek employment, said conditions, since they were not caused or otherwise aggravated by the subject industrial episode, are not to be considered for purposes of determining Applicant's loss of earning capacity, as permanent compensation benefits are to be based upon the earning capacity loss . . . resulting from the disability . . . ." (Citations omitted)

■ The petitioner, in objecting to this finding, correctly states that, "the employer takes the worker as he finds him, and if an industrial injury operates upon an existing bodily condition and produces a further injurious result, that result is caused by the injury in legal contemplation. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960); Condos v. Industrial Commission, 92 Ariz. 299, 376 P.2d 767 (1962)." The petitioner then quite candidly admits that "in the instant case, the subject back injury apparently did not cause or aggravate the preexisting condition of pulmonary emphysema, arteriorsclerotic heart disease, degenerative arthritis in the neck, and hearing loss * * *" and that even with these conditions, the petitioner

was capable of performing his required duties and therefore his preexisting condition should not be considered in determining the loss of earning capacity. A.R.S. § 23–1044(D) provides that:

"In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability * * *."

The petitioner urges, however, that he had no previous disability because his preexisting physical conditions did not affect his ability to earn.

■ In Lee Moor Contracting Co. v. The Industrial Commission of Arizona, (RHOADES case) 61 Ariz. 52, 143 P.2d 888 (1943), the Supreme Court said:

"There is a distinction between a pre-existing condition which is dormant and not disabling at the time of the accident and is stimulated into disability by reason of the accident, and a pre-existing disability that is added to by a second disability. In the case at bar, claimant was performing his daily manual labor with no disabling effects from his preexisting condition up to the time of the accident, but has been disabled since. At the time of the accident he had no disability. True, he had a condition, which was susceptible of becoming a disability when aggravated. Section 56–957, Arizona Code 1939, does not require the Commission to give effect to such a condition and attempt to apportion the concurring causes. That section only requires the Commission to take into consideration previous disability. That means an existing disability at the time of the injury,—something that affects his earning power." 61 Ariz. at 57–58, 143 P.2d at 890.

In this statement the Supreme Court equates "previous disability" with an "existing disability at the time of the injury * * * that affects his earning power," and this statement apparently supports the petitioner's argument. The petitioner's

preexisting conditions would not be considered to be previous disabilities because they did not affect his "earning power." It should be noted that the RHOADES case did not require apportionment between the disability due to the injury and the disability due to preexisting conditions because there was medical testimony to support a finding that the employee's preexisting condition was aggravated by his injury.

In Aluminum Company of America v. The Industrial Commission of Arizona, 61 Ariz. 520, 152 P.2d 297 (1944); Horn v. The Industrial Commission of Arizona, 68 Ariz. 323, 205 P.2d 1198 (1949), and Revles v. The Industrial Commission of Arizona, 88 Ariz. 67, 352 P.2d 759 (1960), the Supreme Court quoted a statement from 1 Schneider on Workmen's Compensation, § 138. Paraphrased, it states that the courts agree that if an employee sustains a compensable injury and this injury aggravates a preexisting condition causing disability, the employee may recover for his injuries. It is also agreed that while the disability may not be caused by the natural progression of the disease, the injury must materially contribute to hasten the preexisting condition's culmination to disability.

The Supreme Court, in Aluminum Company of America, supra, qualified its statement in Lee Moor Contracting Co., supra. The Court said:

"The principle stated in the Rhodes [sic] case, supra, however has no application when, as here, one of the two concurring causes which produced the total disability was not attributable to the accident and injury for which compensation was to be granted, but arose independently out of a disease which was not compensable under the record as it stands in this case. Any other construction would violate the fundamental principle of the compensation law, to wit: 'That compensation is only to be granted when the .disability or disease results proximately from the accident.'" 61 Ariz. at 533, 152 P.2d at 302. Ac-

cord. Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488 (1950).

In Aluminum Company of America, supra, the Court was presented with a case where the employee sustained a compensable injury and he also had the preexisting conditions of Parkinson's disease and osteoarthritis of the spine and pelvis. The medical testimony supported a finding that the arthritis was aggravated by the injury but was "remarkably free from conflict" that the employee's Parkinson's disease was a preexisting condition that was not aggravated by the injury and that this disease was the principal cause of his total permanent disability. The Court set aside the award of the Commission because material evidence was excluded "on the matter of apportioning the disability of the applicant, between the effect of aggravated arthritis and that of non-aggravated Parkinson's disease."

It should be noted that in Aluminum Company of America, supra, as in the case at bar, neither the arthritis nor the Parkinson's disease were "previous disabilities" in the sense that they affected the workman's earning power. Both conditions were discovered and became disabling *after* the industrial injury. The facts in the case at bar are similar because none of the preexisting disabilities suffered by petitioner were discovered nor became disabling until *after* the industrial injury. The petitioner's first visit with J. P. Garvin, M.D., the physician treating him for these ailments, was not until 29 June 1971, almost two years after the injury.

The petitioner urges that Eagle Indemnity Company v. Hadley, 70 Ariz. 179, 218 P.2d 488 (1950), is controlling, where, petitioner states:

"it was held that where an employee was in good physical condition at all times prior to the accident and had worked for two years for the employer without being disabled by reason of age or any physical or mental condition, said condition attended by his age of 66 years did not amount to a 'disability' requiring ap-

portionment for compensation purposes of the pre-existing condition of normal physical degeneration existing at the time of the accident and not accelerated by the injury."

We believe that petitioner's reliance on this case is misplaced since the Court did find that the injury aggravated the normal physical degeneration of the workman due to age. The majority opinion quoted the following statement from a medical examining board:

"It is possible that some degeneration in the general physical condition might have been accelerated by his injury."

Relying on this medical report, the Court concludes:

"The before-mentioned evidence being substantial we will not disturb the commission's findings that the accident caused the entire disability by resulting in new injuries and aggravating his pre-existing condition of normal physical degeneration caused by age." 70 Ariz. at 184, 218 P.2d at 492.

■ In summary then, we have an employee who had no previous disability in the sense of an existing disability that affected his earning power at the time of the injury. The employee did have some preexisting conditions not affected by the industrial injury that, because of natural progression, became disabling subsequent to the injury. While he is entitled to collect compensation for all disabilities that were caused by the industrial injury, he is not entitled to collect workmen's compensation for any disability that developed, through the natural progression of the disease, subsequent to the industrial injury.

■ We hold that when permanent disability is a result of concurring causes and one or more of these causes are not attributable or not related through aggravation to the accident and injury for which compensation is to be granted but arose independently out of a disease, the non-related injuries are not to be considered for purposes of determining the worker's loss of earning capacity, but are to be apportioned so that the recovery is only for the disability resulting from the industrial injury.

Petitioner next objects to finding number 5 of the Decision Upon Hearing and Findings and Award for Unscheduled Permanent Partial Disability of 6 July 1973. Finding number 5 is as follows:

"5. That in addition to matters hereinbefore considered, certain other factors have been given consideration as well; that it is recognized the Applicant has not since the time of injury, nor is he now, employed, but the mere failure to return to employment does not 'per se' establish the inability to do so; (Citations omitted) that in considering Applicant's non-industrial physical problems (hereinafter more specifically discussed), his failure to seek employment directly or through employment agencies, and his 'outside' sources of retirement income, it must be reasonably inferred the Applicant is not particularly motivated, nor does he have a positive attitude, toward returning to gainful employment" (Citations omitted).

The petitioner urges that "consideration of the petitioner's Social Security and/or any other retirement benefits, in terms of speculating as to the petitioner's lack of incentive to obtain employment is totally contrary to the law of this state."

■ Prior cases established that the amount of Social Security and injured worker receives should not adversely affect the amount of compensation he is entitled to collect. Cudahy Packing Company v. The Industrial Commission of Arizona, 7 Ariz.App. 335, 439 P.2d 307 (1968); Womack v. The Industrial Commission of Arizona, 3 Ariz.App. 74, 412 P.2d 71 (1966).

■■ We believe that a fair reading of the Decision Upon Hearing and Findings and Award ˌfor Unscheduled Permanent Partial Disability fails to establish that

"his 'outside' sources of retirement income" was used to reduce the employee's compensation. The hearing officer, in finding number 4, enumerated the factors used to establish the 74% reduction in earning capacity. Finding number 5 and the cases cited in support thereof essentially concerns the hearing officer's belief that the employee lacks motivation to obtain employment. The employee receives both Social Security benefits and retirement benefits from his union. He made no efforts to obtain employment within a year of his earning capacity hearing. The employee testified that he feels he cannot work due to his disabilities. His physician testified that he can do certain types of work and some of his reports indicate that the employee does not have a positive attitude towards engaging in further employment. To be realistic, we must recognize that a person's "outside" sources of income are considerable factors in the decision to return to work. "The importance of a positive attitude in seeking employment has previously been recognized by our courts." Jackson v. The Industrial Commission of Arizona, 16 Ariz.App. 69, 70, 491 P.2d 19, 20 (1972).

As was stated in Magma Copper Company v. Industrial Commission, 15 Ariz. App. 279, 282, 488 P.2d 484, 487 (1971), "in the very difficult field of attempting to apportion that part of a man's loss of earning capacity which is attributable to the industrial accident in relation to that portion which is attributable to his preexisting physical ailments, or to the natural progression of his preexisting physical ailments, we will not disturb the decision of the Commission merely because one cannot reach a mathematical formula for the computation."

The award is affirmed.

NELSON, P. J., Department C, and WREN, J., concur.