534 P.2d 749

**HARDWARE MUTUAL CASUALTY COMPANY and Palo Verde Construction Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Leslie E. Loutzenheiser, Respondent Employee,**

**Horizon Land Corporation and Robert Ward Construction Company, Respondent Employers,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA-IC 1061.**

Court of Appeals of Arizona, Division 1, Department C.

May 1, 1975.

Rehearing Denied June 4, 1975.

Review Denied July 10, 1975.

Lewis & Roca by Merton E. Marks, Phoenix, for petitioners.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Davis & Eppstein by Dale D. Tretschok, Tucson, for respondent employee.

Robert K. Park, Chief Counsel, State Compensation Fund by Dee-Dee Samet, Tucson, for respondent employers and respondent carrier.

## OPINION

STEVENS, Judge.

Historically, the same claimant has sustained three back injuries, each while working for a different employer. Each was a compensable injury. The awards here in question, directed that the second and third employers and their carriers, bear equally the payment of any permanent compensation which may be awarded. The basic question for the decision of this Court is whether, under the facts, there can be a valid apportionment between the carriers.

## PROCEDURES

Before a recitation of the facts we take this opportunity to express our ap-

proval of the procedures which were utilized in these matters.

The claim for the first injury was closed. After the second injury there was a petition to reopen the first claim. Before the claim which was filed arising out of the second injury was closed there was a third injury and a claim filed in connection therewith. All three matters were presented at a well-conducted consolidated hearing. In place of entering three different decisions, one with reference to each claim, on different dates which would have created separate time problems for those who participated in the consolidated hearing, the hearing officer entered one decision as to each of the three matters in a single multicaptioned document, separately disposing of each of the three matters. The employers and their carriers timely filed their respective petitions for review. These were ruled upon by a single document. Two timely petitions, each seeking a writ of certiorari, were filed in this Court, the second being filed as a cross petition. In this manner the interests of the claimant, the two employers and the two carriers came before this Court as a single cause enabling this Court in one opinion to pass on the rights of all of the parties. The foregoing procedures assure all parties a full participation in their efforts to resolve their respective contentions.

## THE HEARING OFFICER'S DECISION

To outline the factual background we quote extensively from the findings set forth in the hearing officer's decision.

### "FINDINGS

"1. That on January 22, 1963 the applicant [Leslie E. Loutzenheiser] was employed as a carpenter and, while carrying heavy beam, sustained an injury to his back; a laminectomy was performed in 1967 after which the applicant was released in 1968 to regular work with a permanent partial disability of 10 per cent; the applicant's testimony established that following this release to regular work he had no difficulty until the injury which he sustained on July 7, 1971; a PETITION TO REOPEN the 1963 injury was filed shortly after the 1971 injury and after a hearing, the petition was denied by a hearing officer's award which became final; a third industrial injury was sustained on May 1, 1972 following which a second PETITION TO REOPEN the 1963 injury was filed and is considered herein.

\*　\*　\*　\*　\*　\*

"4. That the medical evidence adduced from the four doctors who testified herein did not sustain the applicant's contention made by his PETITION TO REOPEN that he had any new disability causally related to the 1963 injury; to the contrary, all of the doctors agreed that the disability resulting from the 1963 injury remained at 10 per cent.

"5. That the applicant has not carried his burden of proof that he has a new, additional or previously undiscovered condition causally related to the injury of January 22, 1963 and is, therefore, not entitled to reopen the claim.

"6. That on July 7, 1971 the applicant sustained a second injury to his back while assisting in lifting a heavy earth tamping machine; this injury was accepted by the insurance carrier, the Hardware Mutual Casualty Company; a laminectomy was performed on July 22, 1971 following which the applicant was released on October 22, 1971 for light work; he worked as a trim carpenter until May 1, 1972 when he sustained a third industrial injury to his back; the second claim had not been closed at the time of the third injury.

"7. That on May 1, 1972 the applicant sustained a third industrial injury to his back while carrying a door and door frame, which injury was accepted by the insurance carrier, State Compensation Fund.

\*　\*　\*　\*　\*　\*

"9. That Dr. Robert P. Goldfarb and Dr. Charles W. Needham, both of whom

are neurosurgeons, examined the applicant in consultation on December 15, 1972; it was their opinion that the applicant has sustained a 20 per cent general functional impairment of which 10 per cent was attributable to the injury in 1963 and an additional 10 per cent was attributable to the second injury which occurred in July 7, 1971; it was their belief that no permanent disability was attributable to the third injury of May 1, 1972; it is noted that the consultation report of Drs. Needham and Goldfarb recommended that the applicant be given rehabilitation training and not return to a carpenter's work; this appears to be the first time during the applicant's back problems that such a recommendation was made.

"10. That Dr. Lloyd S. Anderson, a neurosurgeon, and Dr. Stuart I. Holtzman, a specialist in physical medicine and rehabilitation, examined the applicant in consultation on January 10, 1973; it was their opinion that the applicant had sustained a 20 per cent general functional impairment of which 10 per cent was attributable to the injury in 1963, 5 per cent was attributable to the second injury of July 7, 1971 and 5 per cent was attributable to the third injury of May 1, 1972; it was also their opinion that the applicant should not return to the occupation of a carpenter.

"11. That all doctors considered the applicant's physical condition to be stationary.

\* \* \* \* \* \*

"14. That the applicant has sustained an additional 10 per cent disability as a result of the injuries on July 7, 1971 and May 1, 1972 of which 5 per cent resulted from the injury of July 7, 1971 (employer: Palo Verde Construction Company insured by Hardware Mutual Casualty Company) and 5 per cent resulted from the injury of May 1, 1972 (employer: Robert Ward Construction Company insured by the State Compensation Fund).

"15. That the applicant's condition with reference to both the injury of July 7, 1971, and the injury of May 1, 1972 became stationary on December 31, 1972.

\* \* \* \* \* \*

"19. That on or about January 1, 1973 the applicant began a rehabilitation program and was engaged in such a program at the time of the hearing on April 6, 1973 and May 7, 1973.

"20. That by FINDINGS AND ORDER entered by the Industrial Commission on April 3, 1973 the applicant was ordered placed on temporary disability compensation during said applicant's active participation in the rehabilitation program.

"21. That for the purposes of administration, all temporary compensation benefits to which the applicant is entitled from and after January 1, 1973 shall be paid by the State Compensation Fund, and the Hardware Mutual Casualty Company shall reimburse the said State Compensation Fund fifty per cent (50%) thereof; in the event permanent disability compensation benefits shall ultimately become due, said compensation benefits shall also be shared equally by the State Compensation Fund and the Hardware Mutual Casualty Company, i. e., fifty per cent (50%) each, but said benefits shall be payable directly to the applicant by the said defendant insurance carriers equally.

"22. That the applicant has sustained an unscheduled disability as defined in A.R.S. 23–1044 C and D and, therefore, at such time as the applicant shall cease active participation in the rehabilitation program the Industrial Commission, as provided in A.R.S. 23–1047, should determine his reduction in earning capacity, if any."

## DESIGNATIONS

Leslie E. Loutzenheiser will be referred to as the claimant.

The injury sustained on 22 January 1963 will be referred to as the first injury. The

employer Horizon Land Corporation and its carrier the State Compensation Fund will be collectively referred to as the first employer. This injury bears ICA Claim No. 1/W–03–81.

The injury sustained on 7 July 1971 will be referred to as the second injury. The employer was the Palo Verde Construction Company and its carrier was the Hardware Mutual Casualty Company and they will be collectively referred to as the second employer. This injury bears ICA Claim No. 1/1–45–46.

The injury sustained on 1 May 1972 will be referred to as the third injury. The employer was the Robert Ward Construction Company and its carrier the State Compensation Fund and they are collectively referred to as the third employer. This injury bears ICA Claim No. 2/2–95–51.

## CONTENTIONS

The third employer contends that the claimant has no residual physical disabilities which are causally related to the third injury and that the burden of the additional 10% disability must be borne by the second employer.

The second employer contends that the additional 10% disability must be borne by the third employer and also contends that under Arizona law there can be no apportionment between the second and the third employer.

Since no party has placed in issue the propriety of the decision which denied the reopening of the first injury, we will give the hearing officer's determination no further consideration even though the first employer is a formal party to the proceedings in this Court.

## THE EVIDENCE

■ From our review of the record there is substantial evidence which supports the findings of the hearing officer, subject only to the legal question as to the right to require an apportionment between the second and third employers. The medical conflict recited in the hearing officer's findings 9 and 10 were resolved in the hearing officer's finding 14.

## APPORTIONMENT

■ The general rule is that the employer takes the worker as he finds him, and if an industrial injury operates upon an existing bodily condition and produces a further injurious result, that result is caused by the injury in legal contemplation. Condos v. Industrial Commission of Arizona, 92 Ariz. 299, 376 P.2d 767 (1962); Murray v. Industrial Commission of Arizona, 87 Ariz. 190, 349 P.2d 627 (1960). The second employer urges that this legal principle casts the entire burden of the additional 10% disability upon the third employer. We do not agree.

■ This general rule does not require apportionment in cases where one has a disability due to an industrial injury and a further disability due to preexisting conditions when these preexisting conditions were aggravated by the same industrial injury. In these cases, the entire disability is considered to be caused by the industrial injury. Lee Moor Contracting Company v. Industrial Commission of Arizona, 61 Ariz. 52, 143 P.2d 888 (1943); Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488 (1950).

■ In Aluminum Company of America v. Industrial Commission of Arizona, 61 Ariz. 520, 152 P.2d 297 (1944), the Court was presented with a situation where the employee sustained a compensable injury and he also had the preexisting conditions of Parkinson's disease and osteoarthritis of the spine and pelvis. The medical testimony was that the osteoarthritis was aggravated by the injury but that the Parkinson's disease was not aggravated by the injury. The Court set aside the award of the Commission because material evidence was excluded "on the matter of apportioning the disability of the applicant, between the effect of aggravated arthritis and that of non-aggravated Parkinson's disease." 61 Ariz. at 532, 152 P.2d at 301. The rule of Aluminum Company of America, supra,

then, is that when an employee is injured and sustains a disability but part of the disability is caused by a preexisting condition not aggravated by the injury, such partial disability is to be apportioned. The employee is to be compensated for the industrial disability, for the disability caused by the aggravated preexisting condition but not for the disability caused by the non-aggravated preexisting condition. Russell v. Industrial Commission of Arizona, 23 Ariz.App. 398, 533 P.2d 706 (filed 8 April 1975).

This rule is given statutory authority in A.R.S. § 23–1044, the section that specifies the compensation for partial disability and how it is to be computed. A.R.S. § 23–1044(E) provides:

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

■ A.R.S. § 23–1044(E) requires that when there is a previous disability, this disability must be deducted from the total disability in order to determine what the disability attributable to the present injury is. This statute, while not specifically mentioning the magic word "apportionment," actually requires the Commission to apportion the disabilities between the old disability and the new disability resulting from the injury. This statute requires only that the disability be apportioned without specifying that the disability be industrial or otherwise. In the present case, we have three injuries and the employee suffers a total diability of 20% as a result. At the time of the third injury, we are faced with two previous disabilities. The doctors attribute a 10% disability to the first injury. Two doctors attribute a 5% disability to the second injury and a 5% disability to the third injury. Under the terms of the statute then, we have the percentage of the total disability as 20% and we deduct therefrom the 10% disability attributable to the first injury and the 5% disability attributable to the second injury to arrive at 5% as the percentage of disability attributable to the third or subsequent injury.

■ We hold that when there are consecutive industrial injuries, and a disability is attributable to each, it is proper to apportion the disability when there is medical testimony by which the previous disability can be ascertained. In this manner the disabled employee is compensated fully and yet each employer bears the burden of the disability for which it is responsible.

NELSON, P. J., and WREN, J., concur.