550 P.2d 648

**MORRISON–KNUDSEN COMPANY, INC. and Argonaut Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Hugo Boone, Halvorson-Lent Transcanyon and State Compensation Fund, Respondents.**

**No. 1 CA–IC 1252.**

Court of Appeals of Arizona, Division 1, Department C.

June 15, 1976.

Rehearing Denied Aug. 10, 1976.
Review Granted Sept. 21, 1976.

Jennings, Strouss & Salmon, by Ronald H. Moore and M. Byron Lewis, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Stevenson, Warden & Smith, by Wm. W. Stevenson, Flagstaff, for respondent Boone.

Robert K. Park, Chief Counsel State Compensation Fund, by J. Victor Stoffa, Phoenix, for respondents Halvorson-Lent Transcanyon and State Compensation Fund.

## OPINION

NELSON, Judge.

Hugo Boone (Boone), a Navajo Indian, suffered multiple injuries in April of 1966 as the result of a helicopter crash while employed by Halvorson-Lent Transcanyon (Transcanyon), one of the respondents herein. Transcanyon was insured for workmen's compensation purposes by the State Compensation Fund (Fund).

Among his 1966 injuries were a fractured pelvis, fractured right tibia and fibula, fracture of the right foot, fracture of the mid shaft of the right ulna, fracture of the right clavicle, a cerebral concussion, a possible skull fracture and an ear injury. After much medical treatment and an extensive convalescent period, Boone was released in November of 1967 with a partial permanent disability of the whole man, an unscheduled award. (See: A.R.S. § 23–1044). He was substantially recovered from his severe injuries and suffered no loss of earning capacity as a result of the April 1966 accident.

In December of 1971, while performing heavy manual labor for Morrison-Knudsen Company, Inc. (M–K), petitioner herein, Boone, suffered an injury to his back, diagnosed as a lumbar strain which exacerbated an old congenital spondylolisthesis. The workmen's compensation claim which Boone filed in conjunction with the December 20, 1971 injury was accepted by the Argonaut Insurance Company (Argonaut), M–K's carrier. After bed rest and medication, Boone was examined again on December 27, 1971, and found unable to return to work. After an examination on January 3, 1972, Boone was much better and was authorized to return to work. On February 15, 1972 Argonaut issued a notice of claim status terminating Boone's benefits as of January 2, 1972, re temporary compensation, and as of January 17, 1972, re medical benefits, discharging Boone without permanent disability. This notice was based upon a medical report of S. David Lang, M.D., dated January 17, 1972, one of

Boone's treating physicians at the Public Health Service Hospital at Tuba City, Arizona, on the Navajo Indian Reservation. This notice was not protested and became final.

On February 7, 1973, Boone petitioned to reopen the 1966 claim; the Fund denied the claim to reopen. Boone timely protested the denial of the petition to reopen.

On September 26, 1973, at the time set for the initial hearing on the petition to reopen the 1966 claim, it became apparent to counsel for Boone that his new problems might be related to the 1971 injury. On October 1, 1973, Boone filed a motion for leave to amend his petition to reopen to either add or substitute M–K and Argonaut as the employer and carrier responsible. On October 15, 1973, Argonaut denied the petition to reopen. On November 1, 1973, the notice was protested and a hearing requested. Although the final findings and award issued in this matter purported to dismiss Transcanyon and the Fund, the subsequent hearings held on January 31, 1974, March 19, 1974 and May 16, 1974, were consolidated and captioned, as was the final award, as though both petitions for reopening had been consolidated for hearing and decision. Counsel for both carriers participated in all hearings subsequent to October 1, 1973.

On July 29, 1974, the hearing officer issued his findings and award granting reopening as to M–K and Argonaut, and denying reopening as to Transcanyon and the Fund. Review of that decision was sought by M–K and Argonaut. After review was denied, the matter was brought to this Court by certiorari. Two questions are presented here for review: does the evidence support the hearing officer's determination that Boone had a new, additional or previously undiscovered disability causally related to the industrial accident of December 20, 1971, and, if it does, should the hearing officer have determined the issue of apportionment based upon the testimony of Howard H. Johnston, M.D., that Boone's current disability is contribut-

ed to by a residual condition caused by the industrial accident of 1966? While we believe that the evidence supports the reopening, we also are of the opinion that the issue of apportionment was properly raised by M–K and Argonaut and should have been resolved by the hearing officer. Since the issue was not resolved, the award must be set aside.

## SUFFICIENCY OF THE EVIDENCE

■ Viewing the evidence in a light most favorable to sustaining the award of the Commission, *Perry v. Industrial Commission*, 112 Ariz. 397, 542 P.2d 1096 (1975), there is ample testimony to support the hearing officer's conclusion that Boone suffered from a new, additional or previously undiscovered disability.

When Boone was released for work on January 3, 1972, he was still suffering from pain causally related to the injury and its aggravation of his spondylolisthesis. This pain was *not*, however, of sufficient degree to disable him from working. He worked at his assigned task for M–K from January of 1972 to September of 1972, when he was laid off because of a reduction in force. He again worked for M–K from June through August of 1973. He also worked for at least two other companies in December of 1973.

Although he returned to work in January of 1972, Boone continued to experience pain and continued to see the doctors at the Public Health Service Hospital on the Indian Reservation, as reflected by the medical records in the file, including a visit to doctors in Gallup, New Mexico. As the back pain became more disabling, he was finally referred to Howard H. Johnston, M.D., an orthopedic surgeon, in November of 1973. By this time, Boone, although willing, was unable to work at all because of the pain. Dr. Johnston related his current condition and symptoms to the December 20, 1971 industrial accident.

■ The facts clearly establish a new, additional or previously undiscovered disability. Based upon the report of Dr. Lang, which supported Argonaut's notice of claim status of February 3, 1972, Boone was released without permanent disability and was able to work and did in fact work. While his physical condition, in terms of objective findings, remained substantially the same, the pain caused by those conditions, the acute strain and the aggravated spondylolisthesis, became increasingly disabling. There is absolutely no contradictory testimony, either medical or otherwise, that Boone is now disabled from work by the pain caused by conditions which Dr. Johnston unequivocally relates to the December 1971 incident. Pain alone, when disabling and causally related to industrial accident, is compensable in Arizona. *Smith v. Industrial Commission,* 26 Ariz.App. 297, 547 P.2d 1097 (1976); *Midland-Ross Corporation v. Industrial Commission,* 107 Ariz. 311, 486 P.2d 793 (1971); *Greer v. Industrial Commission,* 16 Ariz.App. 594, 494 P.2d 1339 (1972). Indeed, in the case at bar the objective symptoms which underlie the pain are sufficiently severe that Dr. Johnston is contemplating the possibility of a chemonucleolysis at L 4–5, without surgery, as well as possible disc surgery and spinal fusion. The evidence amply supports the hearing officer's award of reopening. *Perry v. Industrial Commission,* supra.

## APPORTIONMENT

In addition to the facts recited above, Dr. Johnston was also of the opinion that a shortened right leg, together with the altered gait accompanying such a condition, a result of the 1966 helicopter accident, contributed to the low back complaints Boone was currently suffering from. The hearing officer refused to allow Argonaut to ask Dr. Johnston whether he could apportion a percentage of Boone's current complaints to each condition, and if so, how much to each. In this decision, the hearing officer erred.

**4**

The State Compensation Fund argues that there is no right of apportionment in Arizona since employers must take their employees as they find them and are thus liable for the full resulting disability to which their injury contributes. While it is true that the general rule requires the employer to take his employee as he finds him, the concept of apportionment has developed to alleviate the sometimes harsh consequences of finding the last carrier liable for the entire disability resulting from successive injuries. 3 Larson, *Workmen's Compensation Law*, § 95.31 (1976).

While Arizona has no specific statute on apportionment of liability for successive injuries[1], this Court has adopted the concept under certain conditions:

> "We hold that when there are consecutive industrial injuries, and a disability is attributable to each, it is proper to apportion the disability when there is medical testimony by which the previous disability can be ascertained. In this manner the disabled employee is compensated fully and yet each employer bears the burden of the disability for which it is responsible." *Hardware Mutual Casualty Co. v. Industrial Commission*, 23 Ariz. App. 535, 540, 534 P.2d 749, 754 (1975).

The decision in *Hardware Mutual*, supra, relied upon the case of *Aluminum Company of America v. Industrial Commission*, 61 Ariz. 520, 152 P.2d 297 (1944) where the Arizona Supreme Court set aside the award of the Commission because material evidence was excluded on the matter of apportioning disability between the effect of two previous conditions. The rule in *Aluminum Company of America v. Industrial Commission*, supra, has been explained in *Hardware Mutual Casualty Company v. Industrial Commission*, supra, as requiring apportionment when an employee is injured and sustains a disability, but part is caused by a pre-existing condition not aggravated by the injury. In other words, "the employee is to be compensated for the industrial disability, for the disability caused by the aggravated preexisting condition but not for the disability caused by the non-aggravated preexisting condition." *Hardware Mutual Casualty Company v. Industrial Commission*, 23 Ariz.App. at 539, 540, 534 P.2d at 754.

Other Arizona decisions and statutes contemplate an apportionment of responsibility in other phases of the Workmen's Compensation Law, *Russell v. Industrial Commission*, 23 Ariz.App. 398, 533 P.2d 706 (1975); A.R.S. § 23–1065A, supra; *Continental Casualty Company v. Industrial Commission*, 104 Ariz. 499, 455 P.2d 977 (1969). The *Russell* case, supra, applied the concept of apportionment in a situation where "permanent disability is a result of concurring causes and one or more of the causes are not attributable or not related through aggravation to the accident and injury for which compensation is to be granted . . . " 23 Ariz.App. at 402, 533 P.2d at 710.

In view of these Arizona authorities applying the concept of apportionment, we cannot agree with the Respondent Fund that Arizona follows the Massachusetts rule disallowing apportionment.

A.R.S. § 23–1044E was cited as statutory rationale for the rule of apportionment followed in *Hardware Mutual Casualty Company v. Industrial Commission*, supra. It provides:

> "E. In case there is a previous disability, as the loss of one eye, one hand, one foot, or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

---

1. A.R.S. § 23–1065(A)(1–4) calls for apportionment in certain limited situations. It deals with a fraud, administered by the Industrial Commission, to which all carriers and self-insurers have contributed. The briefs do not argue its application in this case.

The same basic provision, albeit in previous form, was relied on in *Aluminum Company of America v. Industrial Commission,* supra, sub. (d) of Sec. 56–957, Arizona Code Annotated 1939. It is important to note, however, that the statute as it existed in 1944 contained both the present A.R.S. § 23–1044E and A.R.S. § 23–1044D in a merged form.

Sub. (d) of Sec. 56–957 Arizona Code Annotated 1939 provided:[2]

> "(d) In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. In case there is a previous disability, as the loss of one eye, one hand, one foot, *or otherwise,* the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury." (Emphasis supplied)

Chapter 55, sec. 1, Laws 1953, subdivided the section in question into two parts, i. e., subdivisions (D) and (E).[3]

The present A.R.S. § 23–1044D provides:

> "D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

It is our opinion that statutory rationale for apportionment can be found in *both* A.R.S. § 23–1044E and A.R.S. § 23–1044D. Such a conclusion dispenses with the necessity for limiting an apportionment rule to disabilities contemplated in A.R.S. § 23–1044E.

While there is some question as to whether A.R.S. § 23–1044E is confined in application to previous disabilities coming within the schedule of A.R.S. § 23–1044B, the cases do not make a definitive limitation. There is authority to suggest the statute's application only in cases where the previous disability has been a scheduled one. *Rodgers v. Industrial Commission,* 109 Ariz. 216, 508 P.2d 46 (1973); *Ronquillo v. Industrial Commission,* 107 Ariz. 542, 490 P.2d 423 (1971); *McKinney v. Industrial Commission,* 78 Ariz. 264, 278 P.2d 887 (1955); *Ossic v. Verde Central Mines,* 46 Ariz. 176,

2. It can be noted that the 1936 version of the same statute referred to . . . the loss of one eye, one hand, one foot, *or any other previous disability.*

3. An explanation of the statutory changes can be found in *Morris v. Industrial Commission,* 81 Ariz. 68 at 72, 299 P.2d 652 at 655 (1956):
"Chapter 28, § 11, Laws 1939, which amended Section 1438e, R.C.1928, segregated the scheduled and unscheduled subsections and thereafter in another subsection, (d), listed the considerations for determining percentage of disability and the method for computing disability in a subsequent injury situation. Chapter 55, § 1, Laws 1953, then subdivided the latter section into two parts—i. e. subsections (d) and (e). In the new subsection (d) the phrase '*amount which represents the reduced monthly earning capacity for the purposes of subsection (c),*' is substituted for 'percentage of disability'. It is notable that this latter phraseology is still used in subsection (e). Obviously both (d) and (e) relate only to subsection (c). It follows that in instances of subsequent injury the commission must determine the entire loss of earning capacity and deduct therefrom the 'disability as it existed at the time of the subsequent injury.' . . .
\* \* \* \* \*
"The language of the statute—both subsections (d) and (e)—plainly infers that the previous disability must be re-evaluated [sic] as of the time of the subsequent award." 81 Ariz. at 72; 299 P.2d at 655."

49 P.2d 396 (1935) [4]. Coexistent with these decisions are the cases which apparently construe the term "previous disability" as applying to scheduled and unscheduled disabilities alike. See e. g., *Hardware Mutual Casualty Company v. Industrial Commission,* supra; *Aluminum Company of America v. Industrial Commission,* supra; *Hoffman v. Brophy,* 61 Ariz. 307, 149 P.2d 160 (1944); *Kilpatrick v. Hotel Adams Company,* 42 Ariz. 128, 22 P.2d 836 (1933).

Having determined that there is ample foundation for application of the doctrine of apportionment of liability between successive carriers, we must decide its relevance to the particular facts of this case. Counsel for M–K has urged that this is a problem of concurrent causation. *Russell v. Industrial Commission,* supra, contemplates apportionment in such a situation.

■■ On a petition to reopen, the relevant subject of inquiry is the claimant's condition at the time reopening is sought. Here it has been argued that both injuries are operating together to cause Boone's present condition or disability, the condition for which reopening is sought. Insofar as there is the possibility of concurrent causation and resulting disability, medical testimony ought to be allowed to determine what percentage of disability is to be attributable to each injury.

In *Hardware Mutual Casualty Company v. Industrial Commission,* supra, the first injury had not become stationary when the second injury occurred. Since the injuries were both open, there was no stable bodily condition for the second injury to operate on separately. When the applicant's condition in *Hardware Mutual* did become stationary, it did so as to both injuries at the same time and the doctors were able to attribute a percentage of the residual condition to both injuries.

Here we have the opposite situation, but potentially the same result, depending upon what the medical testimony will show. Both the 1966 injury and the 1971 injury had become stationary and Boone had been released. He then developed a condition, disabling pain, which was caused or contributed to, in some proportion by the strain and aggravation of his spondylolisthesis in 1971, and by his shortened right leg of 1966. We perceive this situation to fall squarely within the *Hardware Mutual* holding regarding consecutive industrial injuries and a disability attributable to both.

■ While we recognize it is always difficult to allocate percentages in cases such as these, *Russell v. Industrial Commission,* supra, *Culver v. Industrial Commission,* 23 Ariz.App. 540, 534 P.2d 754 (1975), we do not as yet have any testimony on this aspect of the case because of the hearing officer's ruling.[5] As indicated in *Hardware Mutual Casualty Company v. Industrial Commission,* supra, the disability is properly apportionable "when there is medical testimony by which the previous disability can be ascertained." 23 Ariz.App. at 540, 534 P.2d at 754.

The award is set aside.

---

4. The case of *Ossic v. Verde Central Mines* is instructive on the intended application of what is now A.R.S. § 23–1044E. There it is stated that when the Legislature has scheduled several injuries to be compensated for at a fixed rate, the *total picture* of disability in a multiple injury situation must be considered rather than merely adding the amounts allowed for the separate scheduled injuries. Specifically the Court held that the commission "should . . . have computed the total percentage of disability as it existed as the result of all the separate injuries, and based its award upon that status." 46 Ariz. at 190, 49 P.2d at 402. See also: Robert S. Gottsfield, "*Workmen's Compensation—Con-*

*version of Scheduled Award to Unscheduled".* 6 Ariz.Bar J. No. 4 p. 16 (1971).

5. The Fund has argued that objections to the apportionment testimony were properly made because the questions were not specific as to whether Dr. Johnston was stating a percentage of impairment for the two injuries which might bear little relationship to the resulting disability, or whether he was being asked to express an opinion as to the degree to which each of the two injuries contributed to the disability. Efforts must be made at the Industrial Commission to have the percentages accurately reflect the disabilities referable to each injury.

HAIRE, Chief Judge, Division 1, concurring.

EUBANK, Presiding Judge (concurring in part, dissenting in part).

I concur with that part of the majority opinion which holds that the evidence supports the hearing officer's reopening award, but I disagree with that part of the opinion which holds that the state legislature intended to authorize apportionment between carriers by the enactment of A.R.S. § 23–1044(E) and A.R.S. § 23–1065(A)(5).

A reading of the cases cited by the majority shows the steady evolution of the concept of carrier apportionment by the Court of Appeals, but the question has never been specifically addressed by our Supreme Court. The conclusion that such apportionment exists is, in my opinion, pure legislation which the state legislature is much more able to undertake than is this Court. The implications of this holding on the rate structures of carriers are completely unknown to us, and therefore this public policy problem should be left up to the legislature.